SUSAN J. TOLER et al. v. WILLIAM C. EDWARDS et al., Appellants.

Division One, March 28, 1913.

1. QUIETING TITLE: Estoppel and Laches, But No Affirmative Defense, Pleaded: Action at Law. Where plaintiff's suit to quiet title is a strictly legal action, defendant's answer, pleading estoppel and laches solely as a bar to plaintiff's action, but neither pleading any affirmative equitable defense nor

praying any affirmative relief, does not convert the action into a suit in equity; and the finding of facts, by the court without a jury, will not on appeal be reviewed as are the facts of a suit in equity.

2. ———: **Allegation of Ownership: Necessary Proof.** In a suit brought under the statute to quiet and determine the title, where plaintiff alleges in his petition that he is "the owner in fee and claims title" to the land, it is not necessary that he show a legal title in fee or a perfect title; it is sufficient if he show a better title than defendant. The contest is between plaintiff and defendant, and the one who establishes title in himself as against the other is entitled to judgment.

3. ———: **Common Source.** If a common source of title is assumed or pledged or proven by the parties on the trial of the suit to quiet title, then the only question is, which of them has the title of the common ancestor. And where the record title stood in the name of the plaintiffs, and defendants attempt to base their title upon a sheriff's deed made in pursuance to a judgment against them for taxes, defendants assumed and attempted to prove plaintiffs were the common source of title.

4. ———: **Carleton's Abstracts: Sheriff's Deed: Presumption of Acknowledgment: Infant.** Under the provision of the Act of 1907 concerning Carleton's Abstracts, it cannot be presumed as against minors that a sheriff's deed was executed and acknowledged, although the recital in said abstracts specifically says "acknowledgment regular." Under the provisions of that act, prior to its amendment in 1911, recitals in those Abstracts are not made evidence as against infants.

5. ———: **Sheriff's Deed: Order of Publication: Notice by Initials.** Where the record showed the infant plaintiffs by their full given names to be the owners of the property, an order of publication addressed to them by their initials in the tax suit did not give the court jurisdiction over them, and a sheriff's deed under a judgment rendered in pursuance thereof conveyed no title.

6. ———: **Limitations: Substantial Evidence.** Where there was substantial evidence that defendant's adverse possession of the land was not continuous for the statutory period, a finding for plaintiffs by the court sitting as a jury on the issue of limitations will not be disturbed on appeal.

7. ———: **Laches: Eighteen Years Delay.** The defense of laches arises whenever the holder of a paramount title with knowledge of his rights neglects to assert it as against an adverse claimant for such a period of time that its assertion

would prejudice the other party or put him at a disadvantage in proving his title. Where plaintiff took the deed to the land with her when she went to Texas at the age of ten years; the land was sold for taxes soon thereafter, but the sheriff's deed is held to have conveyed no title; the grantee entered into possession, made improvements, and he and his grantees have cultivated it, and it has become greatly enhanced in value; plaintiff never paid any taxes, her reason being that she did not wish to pay taxes until she had reduced the land to possession; she corresponded with attorneys about bringing suit, but they declined to do so; she acquiesced in defendants' possession and as far as they knew made no claim to it; during the thirty years since the land was sold for taxes the county records, including the sheriff's deed, have been burned, plaintiff's suit, brought eighteen years after she reached legal age, is barred by laches.

Appeal from Butler Circuit Court.—*Hon. Jesse C. Sheppard*, Judge.

REVERSED AND REMANDED (*with directions*).

*Ward & Collins* for appellants.

Plaintiffs plead that they are "owners in fee" of the 160 acres of land in controversy; and but for the answer this would be an action at law. But the answer pleads an equitable defense, to-wit, laches and estoppel, and therefore converts this action into a suit in equity. Actions under section 650 are either legal or equitable, depending upon the issues raised by the pleadings. Minor v. Burton, 228 Mo. 563; Nelson v. Jones, 245 Mo. 579; Hayes v. Shaw, 229 Mo. 124; Lee v. Conran, 213 Mo. 404. In cases of equity the Supreme Court will adhere largely to the finding of facts by the trial judge, but is not bound by them. Morley v. Staley, 54 Mo. 419; Hendricks v. Woods, 79 Mo. 540; Carter v. Dilly, 167 Mo. 564. And this is only when the finding of the trial court is based on conflicting evidence. Sharpe v. McPike, 62 Mo. 300; Springer v. Cleinsorge, 83 Mo. 152; Loring v. Atterberry, 138 Mo. 262. Plaintiffs restricted their claim

to a fee simple title, they tender that sole issue, and plead no equitable estate, etc.  Stewart v. Land Co., 200 Mo. 289; Shelton v. Horrell, 232 Mo. 371;· Shelton v. Franklin, 224 Mo. 357; Hayes v. Shall, 229 Mo. 124; Minor v. Burton, 228 Mo. 563.  Plaintiffs wholly failed to establish any title in themselves, and most especially failed to establish the legal fee simple title in themselves.  No common source of title was assumed, for plaintiffs, instead of assuming a common source of title, undertook to deraign their title from the Government, and when they reached the deed conveying the land to plaintiffs they stopped and nothing was said about common source of title by plaintiffs. Therefore, in the language of Nall v. Conover, 223 Mo. 491, plaintiffs did not rely upon a common source of title.  There is no presumption of law that the service against these parties was by publication; there was no proof introduced by plaintiffs to show that service was had by publication; and even the witness Susan J. Summers (Toler) nowhere in her testimony states that she was not served personally, though a witness in the case; but there was a deed, and that deed was based upon a judgment, and the law presumes that all things were regular and that the judgment was rendered upon proper service and that the judgment was valid and binding.  Sec. 3150, R. S. 1899; McCormick v. Fitzmorris, 39 Mo. 244; Adams v. Cowles, 95 Mo. 501; McClannahan v. West, 100 Mo. 309.  Plaintiffs are estopped herein by laches.  Guffy v. O'Reilly, 88 Mo. 426; State ex rel. v. West, 68 Mo. 232; Hudson v. Cahoon, 193 Mo. 562; Moreman v. Tolbert, 55 Mo. 392; Loomis v. Railroad, 165 Mo. 495; Kroenung v. Goehri, 112 Mo. 648; Kline v. Vogel, 90 Mo. 247.

*James R. Brewer* for respondents.

(1)  While the answer of the defendants set up laches and estoppel yet as no affirmative relief is asked

or prayed, this answer does not convert the suit to one in equity. Kostuba v. Miller, 137 Mo. 172; Kerstner v. Vorweg, 130 Mo. 196. '(2) The appellants contended below and in their brief contend in this court that they have acquired the title of Susan Summers (now Mrs. Toler) and William A. Summers, hence they are in no position to contend now that as the plaintiff counted on a "fee simple" title, they cannot recover. Dixon v. Hunter, 204 Mo. 390. Appellants contend in their answer that they have the fee simple title and contend that they have the Susan Summers and William Summers title, hence they thereby admit that the title of Susan Summers and William A. Summers is a fee simple title. (3) There is no proof in the record in this case nor any presumption that the "S. J. Summers and W. A. Summers" mentioned in Entry 14 are the William A. Summers and Susan Summers to whom the land in question was deeded in 1874. State v. Priest, 215 Mo. 1.

## STATEMENT BY THE COURT.

This suit was brought in the 9th of April, 1906, by Susan J. Toler, formerly Susan J. Summers, and others, to determine the title, estate and interest between plaintiffs and defendants in 160 acres of land.

Defendant W. C. Edwards disclaimed any interest in the land in controversy, and averred that all his title and interest therein had been conveyed, in February, 1897, to his co-defendant, W. R. Edwards. Defendant Joseph Sanders made no answer. The remaining defendant, W. R. Edwards, answered separately, stating that none of the defendants other than himself had any interest in the land sued for; admitted that he was a claimant of title to said land, and averred that he owned it in fee simple and that plaintiffs had no right, title or interest in and to said land. For a second defense he pleaded the Statute of Limitation of ten years. For a third defense he pleaded

the Statute of Limitation of thirty years. For a
fourth defense he averred that neither plaintiffs nor
those under whom they claimed title had paid any taxes
on said land since 1874, nor had possession of the same,
nor exercised any ownership over said land; that
though in full possession of knowledge concerning the
claim they now seek to establish, they remained silent
until the bringing of this action; that during all these
years defendant and those under whom he claims title
paid taxes on the land, spent large sums of money in
lasting and valuable improvements, cleared and fenced
a good portion of the same, thereby materially enhanc-
ing its value; that with reasonable care plaintiffs
might have known of these acts and doings of defend-
ant, but by their conduct led defendants and others
under whom he claims to believe they had no claim to
the land. All of which defendant avers constituted
laches and estoppel against the claim now made by
plaintiffs.

The case was sent to Butler county on a change of
venue. At the April term, 1908, the cause was sub-
mitted to the court, a jury being waived, and was
taken under advisement until the January term, 1909,
when the court rendered judgment in favor of Susan
J. Toler for an undivided three-sixths interest in and
to three-fourths of the above described land, and in
favor of plaintiff James R. Brewer for an undivided
two-sixths interest in and to the same quantity of land,
and in favor of plaintiff J. S. Patrick as the owner of
an undivided one-sixth interest in and to the same
amount of land, and adjudged that defendant had no
right, title or interest in and to an undivided three-
fourths interest in the land described in the petition.

As showing the theory upon which the case was
decided, the learned circuit judge made a finding of
facts and law, setting out plaintiffs' chain of title and
the chain of title claimed by defendant emanating
from a sheriff's deed after a tax sale of the land while

Susan J. and William A. Summers were the record owners. The court held that deed to be void and that defendant had no paper title to the land nor any title by the Statutes of Limitation of ten and thirty years, respectively; and that plaintiffs were not estopped by the laches pleaded. The court then decreed the title in plaintiffs to three-fourths of the land according to their respective interests—one-half of that amount to Susan J. Toler and the other half to her attorneys. Other facts will be stated in the opinion.

Defendant duly perfected his appeal to this court; and assigns for error, that the judgment is contrary to the evidence and the law; that incompetent testimony was admitted; and that the judgment is erroneous on the face of the record.

## OPINION.

BOND, J. (after stating the facts as above):—I. Preliminary to a review of this case, we will dispose of the contention of the learned counsel for appellant, that this action, though strictly one at law in its inception, was transformed into a suit in equity by the inclusion in the answer of the defense of laches and estoppel.

Quieting Title: Equitable Defense.

As has been seen, four defenses were interposed in the answer. The record shows that each one of them, including the one resting on laches and estoppel, concluded in the following terms: and defendant "again prays the court to go hence without day and with his costs." None of the defenses asked for any affirmative relief whatever.

It has long been settled in this State that a purely legal action, such as ejectment, is not converted into one in equity simply by the interposition of equitable defenses thereto *unless* there is a prayer for affirmative relief based on those defenses. [Shaffer v.

Detie, 191 Mo. 1. c. 388; Kostuba v. Miller, 137 Mo. 1. c. 172; Kerstner v. Vorweg, 130 Mo. 196.] Both divisions of this court, after some hesitation, have applied this rule to suits to quiet title. [R. S. 1909, sec. 2535.] In the leading case on that subject, the test was stated to be, "If the issues joined entitle the parties to an ordinary judgment at law, then, under the Constitution and laws of the State, the parties are entitled to a trial by a jury; but if the issues tendered are equitable in their nature and call for equitable relief, then the cause is triable before the chancellor." [Lee v. Conran, 213 Mo. 1. c. 412.] That case was followed, after a thorough discussion of the subject, in a case where the point for review arose upon the answer in a suit under the statute to determine title, to which the defendant made the identical pleas made in the case at bar, but concluding his answers with a prayer for full and complete affirmative relief by the investiture of title, and for general relief. [Withers v. Railroad, 226 Mo. 1. c. 384.] Speaking as to the state of the pleadings in that case, Division No. Two said, that while it was true that the setting up of equitable defenses without more would not change a legal action into one in equity, yet in that case there *was* a prayer for affirmative relief, and that this conjoined with such defenses did "convert the case from one at law to a suit in equity," citing cases. [Withers v. Railroad, supra, 1. c. 397.] And added, that this distinction brought the ruling of the court in harmony with the doctrine announced in the leading case of Lee v. Conran, supra. This latter case was also affirmed by this Division in Minor v. Burton, 228 Mo. 1. c. 563. And again affirmed in Division No. Two in Frowein v. Poage, 231 Mo. 1. c. 90.

We are cited to a recent decision of this court In Banc where a suit was brought to determine title, and it was held that the case was one in equity. The answer in that case "pleaded estoppel in aid of defend-

ant's title.'' This is the only reference to the contents of the answer, and from it the inference may be drawn that the answer contained a prayer for affirmative relief; and, hence, the decision in that case was in harmony with those cited above. (The ruling in that case was over the dissent of WOODSON and GRAVES, JJ.) [Nelson v. Jones, 245 Mo. 579.]

In the case at bar the petition merely stated that they "owned in fee" and "claimed title" to the property described. It presented no matter of distinctive equitable cognizance. The answer pleaded only matters. in bar and preclusion. A jury was waived on the trial. Instructions or declarations of law were requested by the parties and given and refused. The court made a finding of facts and law. Only one of the defenses— estoppel and laches—presented any matter of equitable cognizance. It was interposed solely as a bar to plaintiffs' suit. If it had been interposed in that form and to that extent only in *any other* legal action, including ejectment, it could not have converted such action into a suit in equity under the unbroken current of decisions in this State. Nor can it have that effect in the present case without destroying the symmetry of the law. The statutory remedy as it now exists for determining titles provides in explicit language for the bringing of legal as well as equitable actions which shall conform in all respects to the code of civil procedure. [R. S. 1909, secs. 2535 and 2536.] Under this statutory authority plaintiffs brought a strictly legal action. We do not see how the answer to that action can have a greater potency than the same answer to other legal actions, except by the creation of an arbitrary rule. We think (as the record shows the parties thought on the trial below) that this was a legal action; and being submitted to the court, without a jury, the finding of facts has the force of a verdict of a jury. [Minor v. Burton, 228 Mo. l. c. 564, and cases cited.] We do not concur in appel-

lant's contention that the case is before us for review as upon appeal in a suit in equity.

II.  The first point in appellant's brief is directed to the assumed effect of the allegation in the petition, that plaintiffs are "the owners in fee and claim title to the following described real estate," appellant's contention being, that this allegation confines the proof of plaintiffs to the establishment of a legal estate in fee; and that failing proof of that exact es-

Plaintiff's Title.  tate, they must be cast in this suit.  This is an erroneous conception of the statute under which this action was brought.  The allegations of the petition are in conformity with the langauge of the statute and have been expressly approved as sufficient to obtain the benefits of the statute by this court. [Huff v. Land & Imp. Co., 157 Mo. 65; Spore v. Land Co., 186 Mo. l. c. 659; Ball v. Woolfolk, 175 Mo. 278; Elliott v. Sheppard, 179 Mo. 382.]  These allegations describe full rights of absolute ownership and necessarily include any and all lesser titles, interests or estates, for it takes every degree of title to make up the perfect title of an absolute owner of land.  It has been again and again ruled by this court, that the object of this statute (as expressly said in it) is to ascertain and define "*respective* titles" and to adjudge or decree the "*several*" estates of the parties between themselves.  Whichever of the parties has the better title, is entitled to have it quieted against his adversary.  It is not essential that either plaintiff or defendant should possess the highest form of ownership in land, such as would warrant a judgment investing him with a fee simple title good against the world.  It is sufficient if one of the parties proves title and ownership superior to that of the opposite party.  When this is done the owner of the better title has the right to a judgment or decree establishing it as against the

249 Mo.—11

opposite party and quieting it from further attack by him. [Maynor v. Land & Timber Co., 236 Mo. l. c. 728; Gage v. Cantwell, 191 Mo. 698; Graton v. Land & Lumber Co., 189 Mo. 322.] Appellant cites the case of Stewart v. Land Co., 200 Mo. 281. An examination of that case will show that plaintiff while claiming a fee simple title gave no evidence of *any* title whatever. The defendant stood upon a demurrer to the evidence, and the ruling was that the case should be reversed and remanded with leave to the parties to amend their pleadings if so advised. The only point decided by the court was, that an allegation of absolute ownership on the part of the plaintiff could not be sustained, where there was no evidence of any kind of title. That case neither in the point in judgment nor in its reasoning gives any aid to the contention of appellant. We, therefore, rule there is no merit in appellant's point, that plaintiffs' petition precluded them from showing any quality of ownership, legal or equitable, in the land in dispute, which (though less than an absolute fee) was superior to that shown by defendant.

III. The learned trial court found that the title to the land in controversy originated in a military land warrant in 1852 issued to one Albion Crow, whose title was devolved by mesne conveyances upon said Susan J. and William A. Summers and was of record in them at the time of its sale for taxes; that defendant's title ran from the deed under the aforesaid tax sale. The law is well settled as to this proceeding, as well as in ejectment, that if a common Common source of title is assumed by the parties on Source. the trial of the case or pleaded or proven, then the only question is, which of the parties has the title of the common ancestor. [Machine Works v. Bowers, 200 Mo. l. c. 235; Stewart v. Land Co., 200 Mo. l. c. 291; Charles v. White, 214 Mo. l. c. 211; Gage

v. Cantwell, 191 Mo. 698; Nall v. Conover, 223 Mo. 477.]

Appellant claims that no common source of title was assumed or pleaded or proven on the trial. We think a common source of title was assumed and attempted to be proven by defendant on the trial. At the time of the tax sale the record title to this property stood in the names of Susan J. and William A. Summers. It was the land described in the deed to them which the sheriff undertook to sell and convey. If the title of the record holders (Susan J. and William A. Summers) was not divested by the sheriff's deed, then the purchaser under that deed (from whom defendant deraigned title) got nothing and could transmit no title to defendant, and the title remained in Susan J. and William A. Summers which had vested in them by conveyances running back to the military grant from the Government. Hence, it was indispensable that defendant should prove that the sheriff's deed transferred the title of the plaintiffs, and defendant attempted to show that fact by the evidence afforded in the recitals of Carleton's Abstracts. Those entries are to-wit: "Entry 14; Pemiscot county; sheriff's deed to Virg P. Adams; sheriff's deed dated March 16, 1880; filed October 10, 1880, Book G, p. 57; consideration $7; acknowledgment regular;" a column of remarks under which are the words "S. J. and W. A. Summers." The right to use these abstract entries as evidence is given by the Laws of 1907, which was enacted on account of the destruction of the land and court records in Pemiscot county by fire. The probative force of these abstract entries is wholly dependent upon the terms of the session act. Giving the fullest meaning to them, by assuming upon the oral evidence adduced, that the column of remarks was the heading under which was placed the names of the parties whose land was con-

<div style="margin-left: note">Carleton's Abstracts: Infants.</div>

veyed by the deed, and the result is, that the above entries denote the making of a sheriff's deed, dated and recorded as above stated, conveying the particular land sued for in this case, as the land of "S. J. and W. A. Summers" to the purchaser at the tax sale for a consideration of seven dollars. At the time of this deed Susan J. Summers was nine or ten years of age. The record strongly indicates that the brother had died and the sister had moved to Texas about that time, where she has lived ever since. There is nothing in the record which affords a legitimate inference as to whether the tax suit was begun by publication or by personal service. The sheriff's deed referred to in Carleton's Abstracts is non-existent, and hence we cannot gather anything as to its contents other than is afforded by the recitals, of the abstract. It would be *prima facie* evidence if it existed of the matters and things contained in it. [R. S. 1909, sec. 11501.] And also *prima facie* evidence that the persons named therein as defendants in the tax suit were the absolute owners of the land conveyed. [R. S. 1909, sec. 6346.] As it has been destroyed, we are left to what may be gleaned of its contents from the scant recitals of the Abstracts, to the extent these are made evidentiary under the Laws of 1907, p. 271. When this case was tried the act providing for the use of Carleton's Abstracts contained a provision not in the amendment of 1911 (Laws 1911, p. 254) but which was then in full force, to-wit: "In all cases in which any abstracts, minutes, copies and extracts, or copies thereof, which are made admissible in evidence under the provisions of this act, shall be required to be used in evidence, all deeds, conveyances, or other instruments appearing thereby to have been executed by any person or corporation, or in which they appear to have joined, shall (except as against any person or corporation in the actual possession of the lands described therein, at the time of the loss, de-

struction or injury of the said records of such county, claiming title thereto, and except also, as against infants and persons of unsound mind, at the time of the trial or inquiry), be presumed to have been duly witnessed, executed and acknowledged, unless the contrary appear therein.'' [Laws 1907, p. 271.]  At the time of this sheriff's deed Susan J. Summers was an infant of tender years, and her brother, who died when eight years old, if then living was younger.  Under the exceptions of the Act of 1907, set out above, the sheriff's deed as against these minors, cannot be presumed to have been executed and acknowledged.  It was clearly void in the absence of proper acknowledgment and execution.  [R. S. 1909, sec. 11501.] Since the abstracts carry no presumption of its execution or acknowledgment, and as the deed itself was not produced and the record thereof was destroyed by fire, it is evident that there was no evidence in this case showing that any title was conveyed by the sheriff to defendant's ancestor; and the trial court was right in its finding that defendant had no paper title to the land.

Learned counsel for appellant cites the concluding part of the Act of 1907, but that paragraph does not touch the point specifically covered by the one before quoted.  It refers to sales under powers of attorney, judgments, decrees or other legal proceedings, whereas the one cited above in express terms is applicable to the sheriff's deed relied upon as the beginning of appellant's title.  And while it has been stricken out of the act by the act of 1911 (p. 254), it was a part of the act and in full force when this trial took place.

Again, if there had been proof of a valid deed by the sheriff, still if the tax suit was based upon publication, as it must have been if Susan J. Summers had left the State at that time, then the court acquired no

**Suit by Initials.** jurisdiction whatever of the parties, for the rule is that where a publication is made by using the initials of defendants who are the record holders of property in their Christian name, no jurisdiction is acquired, and the judgment rendered in a tax suit thus begun is void. [Shuck v. Moore, 232 Mo. l. c. 656; White v. Gramley, 236 Mo. l. c. 648; Spore v. Land Co., 186 Mo. 656; Vincent v. Means, 184 Mo. l. c. 344.]

IV. There was conflicting evidence in this case as to the continuity and hostile character of the possession of the land in controversy by the tenants or **Limitations.** representatives of those under whom appellant claimed for the ten years prescribed by statute. The trier of the facts could, therefore, properly make a finding on that issue, as he did, that the defense of the Statute of Limitations was not made out. He was also at liberty from all the evidence in the case to find, as he did, that the defense of the Statute of Limitation of thirty years was not established. His conclusions on these issues are not subject to review in the state of the record on this appeal.

V. The only question left in this case is, whether or not plaintiffs are estopped from asserting their title to the land by reason of failure to take any steps to assert it or to recover the land for about eighteen years after plaintiff Susan J. Summers, now Susan J. Toler, arrived at her majority. The evidence given by her shows that she took the deed to the land with **Laches.** her when she left Missouri for Texas; that she left the State when about ten years of age; that she never paid any taxes on the land nor authorized any one to do so on her behalf, her reason being that she did not wish to pay taxes until she reduced the land to possession; that while living in

Texas she had some correspondence with attorneys in Pemiscot county (letters and names not given) and that they declined to bring any suits for her to recover this land; that she secured the services of her co-plaintiffs, Brewer and Patrick, under an agreement shown by her quit-claim deed conveying to them one half of the land in controversy, of date August 21, 1905. The evidence is uncontradicted that during all this time the land has been claimed by the persons whose titles defendant acquired; that improvements have been made upon it; that money has been expended in clearing, and a partial enclosure; that the land has been successively tilled and cultivated by the agents of the grantees in the chain of title running back to the sheriff's deed; and that the 160 acres have greatly advanced in value; that until the institution of this suit, in April, 1906, plaintiff Susan J. Toler made no claim to any right, title or interest in said land; but as far as defendant or his grantors knew, acquiesced in the claim of ownership made by him; that during the thirty years of non-claim by respondents, the public records of that county containing the sheriff's deed and court proceedings have been burned and witnesses have disappeared. The learned circuit judge does not call attention to any fact or matter in proof supporting his finding against the facts admitted by plaintiff in her deposition or established by the evidence. The defense of laches is based on the maxim, that he who seeks equity must do equity; it exists independently of the Statute of Limitation and arises whenever the holder of a paramount title with knowledge of his rights neglects to assert it as against an adverse claimant for such a period of time that its assertion would prejudice the other party or put him at a disadvantage in proving his title. [5 Pomeroy Eq. Jurisprudence (1 Eq. Remedies), secs. 22 et seq.; Shelton v. Horrell, 232 Mo. 374; Cockrill v. Hutchinson, 135 Mo. l. c. 75; Rutter v. Carothers, 223 Mo

640; Stevenson v. Smith, 189 Mo. 447; Bucher v. Hohl, 199 Mo. l. c. 330; Loomis v. Railroad, 165 Mo. l. c. 495; Hudson v. Cahoon, 193 Mo. l. c. 562; Kline v. Vogel, 90 Mo. l. c. 247.] All the elements to constitute this defense were stated in the deposition of the plaintiff, or shown by the uncontradicted evidence of other witnesses. As trier of the fact, neither the circuit judge nor the jury could properly exclude from their view the evidence establishing this defense resting upon the admission under oath of the respondent and the uncontradicted corroboration thereof by all the facts and circumstances in the case. The finding should have been for appellant on that issue.

Our conclusion is that the court at the close of the testimony should have been given a declaration of law that upon the pleadings and evidence the plaintiffs were not entitled to recover.

The judgment herein is reversed and the cause remanded with directions to dismiss plaintiffs' suit. *Graves, J.,* concurs; *Woodson, P. J.,* and *Lamm, J.,* concur in result.