MARK T. FLEMING v. NETTIE WILSON, Appellant.

Division One, March 28, 1919.

1. **CONVEYANCE: Date: Misprision.** Where the deed was dated June 24, 1890, the certificate of the notary recited that his commission would expire on March 31, 1893, and the deed was recorded March 19, 1895, a recital in the notary's certificate that it was acknowledged on June 24, 1895, was a mere misprision for June 24, 1890. And these facts, together with an admission in defendant's answer that plaintiff "obtained a deed to such land on the 24th day of June, 1890," conclusively show that the deed was completed on said date, and presents no issue for the jury.

2. ———: **Tax Deed: Sale After Register of Deed.** A deed obtained from the sheriff at a sale of land for taxes, the date of the sale being after the recording of a deed to a grantee who was not a party to the tax suit, invests in the purchaser no title as against said grantee.

3. **QUIETING TITLE: Estoppel: Laches.** A delay of several years of the owner in asserting title, as against a purchaser at an invalid tax sale, of wild, unimproved and untillable land, all the records upon which title rests being in existence and available, presents no element of estoppel or laches or abandonment.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

AFFIRMED.

*Ward & Reeves* for appellant.

(1) The court erred in excluding the testimony offered by the defendant. (a) One of the defendants

in the tax judgment deed under whom the defendant claims was Eugene Cropper, mortgagee. In plaintiff's deed he assumed this mortgage. The defendant offered this mortgage to show the proper parties defendant were made defendants in the tax suit, McIlravy and Eugene Cropper, mortgagee. The court sustained the objection. (b) The court sustained the objection on this line of testimony to-wit: That the land was of little value, when bought in at the tax sale and it had enhanced in value 300 per cent and that this enhancement in value was by special assessment for levee and drainage districts and that this had been paid by the defendant and that the plaintiff had abandoned the property and waited until it had enhanced in value by the expenditures of the defendant. This was competent testimony. Toler v. Edwards, 249 Mo. 163; Shea v. Shea, 154 Mo. 607; Evans v. Snyder, 64 Mo. 518; Hudson v. Cahoon, 193 Mo. 563. (2) The court erred in giving peremptory instruction to the jury to find for the plaintiff. (a) The sheriff's deed under which the defendant holds conveying the title of McIlravy and Agnes Cropper, mortgagee, was good, and the tax judgment presumed to be against the owners of the land and conveyed the title to the grantees and put the burden on plaintiff to show that McIlravy had prior thereto conveyed the title. Sec. 6346, R. S. 1909; Sec. 11501, R. S. 1909; Einstine v. Holliday-Klotz Lbr. Co., 132 Mo. App. 82. (b) The title being in McIlravy, with Eugene Cropper, mortgagee, and they being sued for taxes, the plaintiff has the burden to show that he obtained the deed from them prior to the date of the judgment in the tax suit February 14, 1895. The deed he offers to show that fact shows on its face that it was signed and acknowledged June 24, 1895, four months after the judgment lien for taxes on said land; it then became a question of fact for the jury whether the deed was made before or after the tax judgment and peremptory instruction to find for the plaintiff in the face of this record is erroneous. 38 Cyc. 1524. Young v. Stephens, 66 Mo. App. 226;

Carp v. Insurance Co., 104 Mo. App. 518; Primm v. Haren, 27 Mo. 205; Chapman v. Ry. Co., 146 Mo. 592; Manse v. McGuire 52 Mo. App. 136. (c) Laches and abandonment apply to a law suit such as ejectment, but if held to apply only to an equitable title, then plaintiff only had an equitable title under the swamp land law unless he had a patent. Mosher v. Bacon, 229 Mo. 349; Nall v. Conover, 223 Mo. 490; Russ v. Sims, 261 Mo. 52; Phillips v. Trust Co., 214 Mo. 663. (3) The tax sale and the deed thereunder carried title. (a) The tax deed took the title of McIlravy and the mortgagee, Cropper, and the plaintiff's deed not being acknowledged until June 24, 1895, he could not claim thereunder against the sale under the tax judgment February 14, 1895. Sugg v. Duncan, 238 Mo. 422; Harrison Machine Works v. Bowers, 200 Mo. 219; Sec. 11499 R. S. 1909; Schnitger v. Rankin, 192 Mo. 41. (b) But if it be conceded that there be error in the acknowledgment of the deed which stated that it was June 24, 1895 (which we deny), then under the statutory presumption disputed evidence to the different inferences that could be drawn from the deed would certainly make it at least a question of fact for the jury. Sec. 6346, R. S. 1909; Sec. 11501, R. S. 1909; Einstine v. Holliday-Klotz Lbr. Co., 132 Mo. App. 82; Primm p. Haren, 27 Mo. 205; 38 Cyc. 1524; Young v. Stephens, 66 Mo. App. 226; Carp v. Ins. Co., 104 Mo. App. 518; Chapman v. Ry., 145 Mo. 492; Manse v. McGuire, 52 Mo. App. 136. (c) If the tax deed was not good then the plaintiff's conduct shows abandonment, laches and estoppel and precludes a recovery. Ball v. Woolfolk, 175 Mo. 278; Hudson v. Wright, 204 Mo. 412; Nobles v. Cates, 230 Mo. 189; Martin v. Kitchen, 195 Mo. 477; Clyburn v. McLaughlin, 106 Mo. 521; Shea v. Shea, 154 Mo. 604; Toler v. Edwards, 249 Mo. 152; Hatch v. St. Joe, 68 Mich. 240. (d) If the party claiming to have the equitable title to the land is out of possession his equitable rights will be barred if he fails to take steps within a reasonable time to establish it unless he can show hinderance or

impediment caused by the fraud or concealment of the other party, and the court will take into consideration several things, among them the following: Increase in the value of the land, unreasonable delay, loss of testimony, payments of taxes, etc. 32 Cyc. 1345; Hall v. Law, 102 U. S. 461; United States v. Moore, 12 Howard (U. S.), 209; Special v. Hemrice, 120 U. S. 349; Underwood v. Dugan, 24 Fed. 74; Harkness v. Underhill, 1 Black (U. S.), 315; Taylor v. Whitney, 56 Minn. 386; Comer v. Comer, 19. Ill. 170; Murphy v. Blair, 12 Ind. 184; Severns v. Hill, 6 B. Mon. (Ky.) 482; Allen v. Allen, 47 Mich. 74; Hendrickson v. Hendrickson, 42 N. J. Eq. 657; Weis v. Bethel, 8 Ore. 552; McGrew v. Foster, 113 Pa. St. 642; Hughson v. Manderville, 4 Desaus (S. Car.), 87; Hines v. Thorn, 57 Tex. 98. (4) Plaintiff contends that because the land was wild timber land the doctrine of laches and estoppel does not apply. With nothing more than that fact and the mere payment of the ordinary taxes, that statement of the law is correct; but when the following things are considered then the equitable defense of abandonment, laches and estoppel apply, to-wit: (a) Plaintiff seeks to quiet an equitable title; (b) the defendant in addition to paying the ordinary tax, has paid the betterment for building the levee to keep off the overflow; (c) and in addition the defendant has paid the assessed benefits of the drainage district to drain the land; (d) the land by reason of these facts has increased from $1.25 to $30 an acre; (e) the defendant owns the land from the grantees in sheriff's deed; (f) the deed plaintiff holds under is so contradictory as to its dates that the court might well find that the plaintiff lost his land by the tax sale, since the deed was acknowledged after the judgment became a lien on the land; (g) the date when the deed was executed could have been shown if the suit had been timely brought, but the notary public is gone, the man Denham is dead or gone, McIlravy is gone and cannot be found, and plaintiff's sister, who knew of this matter, is dead;

(h) plaintiff bought the land subject to the taxe's, which were a judgment lien at the time; (i) plaintiff bought the land subject to the mortgage and the mortgagee's interest was secured in the tax sale; (j) plaintiff waited twenty or twenty-five years until all the witnesses are dead or gone, deed lost, great amount' expended for improvements on the land and its value increased 3000 per cent. These things constitute laches.

*Duncan & Brewer* for respondent.

(1) As the plaintiff's deed from McIlravy was made before the suit for taxes was filed and as this deed was on record before the sale for taxes, the tax sale was void and the purchaser at the tax sale acquired no title to the land in question by the tax deed and as the defendant deraigns her title from said tax sale, the defendant has no title. R. S. 1889, sec. 9303; Sugg v. Duncan, 238 Mo. 425. (2) As the plaintiff claims under a legal title the doctrine of laches does not apply. The doctrine of laches is only applied to defeat a claim for some equitable relief. It is no bar to a claim made under a legal title. Chilton v. Nickery, 261 Mo. 243. (3) As the land in question is wild timber land and not in the actual possession of anyone and uncultivated, the doctrine of laches or estoppel does not apply. Russ v. Sims, 261 Mo. 55.

BOND, C. J.—I. Plaintiff sues to quiet the title to a certain eighty acres of unimproved timber land in Pemiscot County, Missouri, alleging that defendant claims some right, title, estate or interest adverse to him.

The answer was a general denial, coupled with an allegation of title in defendant, and a plea of abandonment, estoppel and laches on the part of plaintiff.

Plaintiff's claim of title dates from a patent to the State of Missouri, under an act of Congress, approved September 28, 1850, followed by a conveyance to Pemi-

scot County by the State of Missouri. The next link is a patent from Pemiscot County to Alexander Barnes, and then follows a devise by said Barnes to his wife Agnes, a deed from Agnes Barnes (Cropper) and her husband to H. G. McIlravy, from whom Plaintiff Fleming purchased. This latter deed bears date of June 24, 1890, but was not filed for record until the nineteenth day of March, 1895, five years after plaintiff purchased the land.

Defendant Nettie Wilson claims title in this way: In 1889 H. G. McIlravy morgaged the land to one Agnes Cropper, and on September 3, 1895, the land was sold for taxes to R. F. Michie and R. B. West. Thereafter West sold his interest to William Hunter, and on September 4, 1897, R. F. Michie purchased the interest of William Hunter. Later said Michie died and left defendant, Nettie Wilson, his widow, and she, electing to take a child's part, this eighty acres of land was set apart to her.

The testimony of Plaintiff Fleming shows that he led a roving life, going from Illinois to Missouri, thence to Arkansas, Texas and Alaska, but finally locating in Oregon in 1901, where he has lived until the present time; that he bought the land in controversy on June 24, 1890, from H. G. McIlravy for one thousand dollars, and assumed a mortgage of about two hundred and fifty dollars; that later (about 1892) he exchanged eighty acres of this land with one Denham for land in Illinois, and at that time it was discovered the McIlravy deed had not been recorded; that Denham took both deeds with the understanding that he was to have them recorded; that he (plaintiff) was unable thereafter to get in touch with Denham, although he wrote to him at various times and addresses; that he left the land in charge of his sister and believed she or Denham would see that the taxes were paid, particularly as he had given Denham permission to use the balance of his land adjoining his eighty acres "if he would fix it up, clear it and pay the taxes until he got it where

it would pay, and when it would pay my sister would settle with him for whatever rent there might be coming for the use of the land;" that when he heard of his sister's death he tried to find her papers and failing to do that he employed an attorney to look into the matter. This suit resulted.

Defendant's testimony shows that H. G. McIlravy mortgaged the land in 1889 for two hundred and fifty dollars to one Agnes (not Eugene) Cropper; that on September 3, 1895, the sheriff sold the "interest of H. G. McIlravy and *Eugene* Cropper, mortgagee" in said land, to one R. F. Michie and R. B. West, to cover taxes of the years 1890 and 1892, and it is from this source that defendant's title runs.

At the close of the evidence a verdict was directed in favor of plaintiff. Defendant duly appealed.

II.   There are, in the ultimate analysis, only two questions presented by this appeal: first, whether or not plaintiff got the title to the land in controversy of the admittedly common ancestor, McIlravy; second, if so, whether he was barred in the assertion thereof by laches, estoppel or abandonment.

As to the first: the record shows that on June 24, 1890, H. G. McIlravy executed a warranty deed, subject to a mortgage of two hundred and fifty dollars, conveying the land to plaintiff. This was done in St. Louis and the deed was acknowledged there before a notary public of that city, whose certificate shows that the grantor, a single man, acknowledged the deed on the "24th day of June, 1895" (italics ours); that his terms as a notary would expire on "March 31, *1893.*" The deed further shows that it was filed for record *March 19, 1895.* Obviously the italicised figure "5" in the above statement of the date of the acknowledgment was a mere misprision, for the figure "0" so that the completed statement should have been written, "24th day of June, 1890." This is apparent from the context which shows that the office

**Misprision.**

277 Mo.—37

of the attesting notary expired on March 31, 1893, and the further showing that the deed as acknowledged was actually filed for record on March 19, 1895; both periods of time being antecedent to the erroneous date given by the notary. In addition to this contextual showing, the answer of the defendant admits "that he [plaintiff] obtained a deed to said land on the 24th day of June, 1890." The face of the deed, the foregoing recitals of its acknowledgment, the expiration of the office of the notary, the recited date of its filing for record, and the admission of the obtention of the deed in the answer, *conclusively* show that it was completed and delivered to plaintiff on June 24, 1890. This fact was determinable from the face of the deed and the admissions in the pleadings and, therefore, presented no issue for a jury.

As against the record title thus established in plaintiff by the deed of the common grantor, the record title relied upon by defendant was wholly unavailing; for that title was derived only from a sale for taxes, the date of which was after the recording of the deed. Hence it invested the purchaser with no title whatever as against the grantee in the prior recorded deed. [Sugg v. Duncan, 238 Mo. l. c. 426, et cases cited; Russ v. Sims, 261 Mo. l. c. 53.]

**Tax Sale.**

It is uncontroverted that the sale for taxes was not made until September 3, 1895, hence about six months after the recording of the deed to plaintiff. The plaintiff was not a party to the suit for taxes, and the only defendants were McIlravy and a *misnamed mortgagee*. The real mortgagee was *Agnes* Cropper. The person named in the tax suit was *Eugene* Cropper. The muniment of title acquired by plaintiff by the deed to him from H. B. McIlravy, vested plaintiff with the equitable ownership of the land therein described in fee, since the naked legal title had been conveyed to secure the incumbrance of two hundred and fifty dollars, subject to which the land was sold. The land itself was not in the possession of any one; it was a

hole filled with water until about June of each year, not susceptible of tillage and no improvements were made upon it by defendant or those under whom she claims. [Russ v. Sims, 261 Mo. 1. c. 55.] The delay of plaintiff in the assertion of his rights of ownership has not prejudiced defendant in the proof of her title; for the defective records upon which it rests have not been destroyed and still exist and were adduced in evidence on the trial. [Toler v. Edwards, 249 Mo. 152.]

**Estoppel.**

It is not pointed out that any element of estoppel has been created by the conduct of the plaintiff in this case. [Dameron v. Jamison, 143 Mo. 491, 492; Bales v. Perry, 51 Mo. 1. c. 453, 454; Blodgett v. Perry, 97 Mo. 1. c. 273; Collins v. Rogers, 63 Mo. 515; Guffey v. O'Reilly, 88 Mo. 418.]

And we have been unable to find any substantial ground to support the defense of laches or abandonment. [Myers v. DeLisle, 259 Mo. 514.]

The judgment of the circuit court is, therefore, affirmed. It is so ordered. All concur.