GINACA et al. v. PETERSON (two cases.) (Nos. 3391, 3392.)

(Circuit Court of Appeals, Ninth Circuit. February 2, 1920. Rehearing Denied April 5, 1920.)

1. QUIETING TITLE ⊜⟹44(4)—QUITCLAIM DEED SUFFICIENT PRIMA FACIE TO SUPPORT SUIT.

A quitclaim deed from one in possession, accompanied by delivery of actual possession, is prima facie evidence of title, and will support a suit to quiet title.

2. QUIETING TITLE ⊜⟹10(2)—IT IS UNNECESSARY TO GO BACK OF COMMON SOURCE OF TITLE.

Where defendant in a suit to quiet title claims through a tax deed based on a sale for taxes levied while complainant's grantor was owner, such grantor is the common source of title, and it is unnecessary for either party to go back of such source in the proof.

3. TAXATION ⊜⟹788(7)—TAX DEED NOT EVIDENCE OF REGULARITY OF NOTICE TO REDEEM.

A tax deed is not evidence of giving of the notice required by Pol. Code Cal. § 3785, to be given to the owner or occupant of the land 30 days before expiration of time for redemption, or before application for the deed, and without such notice the deed is invalid.

4. CORPORATIONS ⊜⟹616—CONVEYANCE OF PROPERTY BY SOLE STOCKHOLDER AFTER FORFEITURE OF CHARTER VALID.

On a forfeiture of the charter of a corporation under the laws of California, the president, who was also sole stockholder and trustee, *held* authorized to convey its property, and in the asbence of creditors his conveyance cannot be collaterally attacked.

5. MINES AND MINERALS ⊜⟹12—ALIEN MAY PROTECT RIGHTS IN UNPATENTED CLAIMS.

An alien may own unpatented mining claims and protect his rights therein in adverse proceedings in the Land Department or in the courts, although not qualified to obtain a patent by suit under Rev. St. § 2326 (Comp. St. § 4623).

Appeals from the District Court of the United States for the Northern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Suits in equity by Ellen Justina Peterson against Gladys Ginaca and Louis A. Ginaca, executrix and executor of the will of Henry G. Ginaca, deceased, and No. 9 Gold Mining Company. Decrees for complainant, and defendants appeal. Affirmed.

---

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A. H. Ricketts and Peter F. Dunne, both of San Francisco, Cal., Louis W. Bennett, of Oakland, Cal., and R. L. McWilliams, of San Francisco, Cal., for appellants.

T. John Butler, Sullivan & Sullivan, and Theodore J. Roche, all of San Francisco, Cal., and J. C. Thomas, of Oakland, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. These are appeals from decrees quieting title of appellee, Ellen Peterson, to certain mining lands in California, and enjoining appellants from trespassing or interfering with appellee's possession. Defendants denied all material allegations of the bill, and alleged ownership and actual, open, peaceable, and exclusive possession. The defendants No. 9 Gold Mining Company and Henry G. Ginaca, who died pending these suits, also set up proceedings in the United States Land Office in the matter of their respective applications for patent from the United States for certain tracts, Nos. 6 and 10. Tract No. 6 is called the Eureka mine; tract No. 10, the No. 9 mine, or the Baltimore mine.

It appears that in 1896 Moses L. Rodgers sold many mining claims, including the property involved, to S. W. Parker, for a consideration partly paid in cash and partly by mortgage back upon the property in the sum of $48,000. At the time of the transfer by Rodgers he was in possession, and delivered possession to Parker, who remained in possession until October 4, 1896, when he conveyed the lands to the Hornitos Gold Mining Company, a California corporation. By conveyance dated January 8, 1913, between the tax collector of the county of Mariposa, state of California, and the state, the record title of the property, which was sold for nonpayment of taxes for the year 1897, was described as the value of the interest created by mortgage by Parker to the Hornitos Gold Mining Company, and the record title is described also in another conveyance between the tax collector and the state of California dated January 6, 1915. The mortgage of $48,-000 is also referred to in the indenture. In March, 1905, the Hornitos Gold Mining Company, by proclamation of the Governor of California, forfeited its charter, and on March 10, 1915, Parker, who was the sole stockholder and trustee of the corporation, conveyed the property involved to C. H. Perry, who took possession, and on March 10, 1915, by deed conveyed to Ellen Peterson, appellee herein.

The two tracts, Nos. 6 and 10, called the Eureka mine and the No. 9 mine, or Baltimore mine, were in the possession of and conveyed by the predecessors in interest of Ellen Peterson, as already set forth, and Parker, on September 19, 1896, located the Eureka mine by marking mounds of rock and posting notices and running a shaft or tunnel 200 feet deep. There was a shaft, rock in place, and a large out-cropping. Parker also erected stamps, engines, and put improvements upon the mine. The No. 9 or Baltimore mine (called tract 10), in the possession of and conveyed by Rodgers to Parker, as already indicated, was used as a center from which the other mines, except the Eureka, were worked. The Eureka was away from the other properties. Improvements were made upon the No. 9 as far back as 1896. After acquiring the

properties, Ellen Peterson was frequently upon them, directed assessment work thereon, and in February, 1915, under her direction, work of the value of $300 was performed on the Eureka. In 1914 the assessment work was done on the No. 9, but in 1915 the performance of such work thereon was prevented by the appellants. In the latter part of 1916, the appellee, by reason of disturbances, was prevented from working on the Eureka. In April, 1915, two of Ellen Peterson's employés were arrested at the instance of the alleged grantors of the appellants, and were charged with being unlawfully upon the properties.

It also appears that in April, 1917, while these suits were pending, Henry G. Ginaca, since deceased, applied for patent for the Eureka mine under the name of the Josephine mine, and that an adverse claim was filed by Ellen Peterson in the Land Office in June, 1917. Application for patent for the No. 9 Gold Mining Company was also made, and an adverse claim was filed in the Land Office by Ellen Peterson.

The appellants lay claim to all property involved, except the No. 9 mine and the Eureka mine, upon the basis of tax deeds from the tax collector of Mariposa county, Cal. One deed is from D. E. Bertken, dated September 11, 1913, to G. D. Turner, purporting to convey a certain piece of property containing 108 acres; another deed from the same tax collector, dated November 6, 1915, to Rosendo Busano, purporting to convey 25 acres; another deed, dated March 15, 1915, to Clarence W. Lake. The deed dated September 11, 1913, to Turner, purports to convey the property described therein for nonpayment of taxes for 1905, while the deed to Busano purports to convey certain property for nonpayment of taxes for the fiscal year 1896. In neither of these deeds is it recited that any notice of the sale was given to the owner of the land, and there is no evidence in the record that any such notice was given. In the deed to Lake the tax collector purports to convey certain of the lands described in the complaint filed in this action, but not all of such lands.

With respect to the mining locations, the title which appellants assert is wholly dependent upon the claim that the locations are superior to the title established by Ellen Peterson. The argument of the appellants is that a quitclaim deed is not of itself sufficient to constitute prima facie evidence of title; that a suit to quiet title cannot be maintained unless the complainant's title by occupancy has ripened into a title by prescription, or, if based upon color of title, by the payment of taxes; that a tax deed, whether valid or not, does not create a common source of title; that where the defendants make application for patent to the mining claim the complainant in a suit pending prior to such application should, by supplemental pleading, base the existing suit upon rights granted by section 2326, Revised Statutes of the United States (Comp. St. § 4623), and have the controversy determined accordingly; that the title to the Josephine location being in fieri, and no supplemental pleading having been filed by the complainant, the court was without authority to determine that the title to that claim vested in the complainant.

The appellee contends that the tax deed of March 15, 1915, is void, and that the Eureka and No. 9 mines are properly claimed by appel-

lee by virtue of prior location and the doing of annual assessment work and by virtue of the color of title in Ellen Peterson under the deeds to her from her grantors and more than five years' undisturbed possession of the mines immediately prior to the filing of these suits.

[1] First considering the tracts, other than the unpatented mining claims, tracts Nos. 6 and 10, we find that appellee Peterson and her grantors were in continuous and exclusive possession for more than 20 years. It therefore devolved upon the appellants to overthrow her title by showing that the tax title deed of March 15, 1915, to Lake was superior. A quitclaim deed from one in possession, accompanied by a delivery of actual possession, is prima facie evidence of title, and is proof thereof until such title is shown to be invalid or inferior by the one who assails it. See cases hereinafter cited.

But, if we assume that the tax deeds under which appellants claim were valid, they establish a common source of title. Appellants rely upon the tax deed of March 15, 1915; that is, the tax deed to Lake. But from September, 1896, when Rodgers, who was then in possession, conveyed to Parker, Parker held title until October, 1896, when title was conveyed to the Hornitos Gold Mining Company. Title remained in the Hornitos Gold Mining Company until after the forfeiture of the charter of that corporation, when title became vested in the trustees for the stockholders.

Examination of the assessment roll, the advertisement of the delinquent list, the certificate of sale to the state, the published notice of sale of the tax collector, and other papers which had to do with the proceedings which culminated in the execution of the tax deed of March 15, 1915, discloses that the assessment was of a mortgage given by S. Webber Parker during the time that the title to the land was in Parker, and that the record title to the land at the time of the assessmen thereof was in the Hornitos Gold Mining Company.

[2] Taxes are a lien upon the lands, and in the enforcement of statutory proceedings to enforce such a lien there must be an ownership of the property against which the lien is established. Toler v. Edwards, 249 Mo. 152, 155 S. W. 26. It would follow that, inasmuch as the title asserted by the appellants and that asserted by the appellee are from a common source, it is not necessary for either party to go back of that common source in their proof. McGorray v. Robinson, 135 Cal. 312, 67 Pac. 279. In Phillips v. Menotti, 167 Cal. 328, 139 Pac. 796, the court said that, where both parties claim title from a common source, it is sufficient to show conveyance of title from that source, without further establishing that the grantor himself had title. In Bond v. Aickly, 168 Cal. 161, 141 Pac. 1188, in an action to quiet title, the court said:

"As between parties, neither of whom can connect himself with the legal title, the one who proves prior possession in himself or those through whom he claims, makes out a sufficient showing of ownership. 15 Cyc. 30. 'Occupancy for any period confers title sufficient against all except the state and those who have title by prescription, accession, transfer, will, or succession.' Civil Code, § 1006. It has always been the law in this state, as well as elsewhere, that possession is prima facie evidence of ownership."

The court cited many earlier California decisions and continued:

"Accordingly, in the absence of anything to show a better or prior title, Aickly's possession, taken in 1892, established his ownership of the premises at that time. His quitclaim deed to Annie Bond transferred to her whatever title he then had, * * * and Annie's subsequent deed vested the title in plaintiff. When this point was reached, the plaintiff had established a perfect prima facie case, which could be overcome only by establishing a superior title in the defendant."

The same doctrine is announced in Redmond v. McLean, 32 Cal. App. 729, 164 Pac. 15.

[3] The Lake deed of March 15, 1915, from the tax collector, recites that levy was made for taxes for 1897 due to the state, but fails to show that the Hornitos Company had any notice of the tax sale or of any proceedings leading up thereto, and the testimony heard upon the trial was to the effect that no notice of the tax sale, or any of the proceedings upon which the sale was based, was ever given to the Hornitos Gold Mining Company. There is a recital that notice was mailed "to the party to whom the land was last assessed," etc., to wit, "M. L. Rodgers," etc. The assessment roll which was introduced in evidence shows upon its face that the Hornitos Gold Mining Company was the owner of the land when the assessment was made, and there is nothing in the deed from the tax collector to Lake, dated March 15, 1915, showing that any notice of any kind was ever given to the Hornitos Gold Mining Company.

Section 3785 of the Political Code of California, in force when the sale to the state was made, provided that the purchaser of property sold for delinquent taxes, or his assignee, must 30 days previous to the expiration of the time for redemption, or 30 days before he applies for a deed, serve upon the owner of the property purchased, or upon the person occupying the property, if the property is occupied, a written notice stating that said property, or a portion thereof, has been sold for delinquent taxes, giving the date of the sale, the amount of property sold, the amount for which it was sold, the amount then due, and the time when the right of redemption will expire, or when the purchaser will apply for a deed. The tax sale under which appellants herein claim was had March 15, 1915, or 5 days after the Hornitos Gold Mining Company conveyed the land to one C. H. Perry; but the statute was not complied with by notice to the Hornitos Gold Mining Company at least 30 days before that sale.

In Chapman v. Jocelyn, 187 Pac. 962, decided May 31, 1919, the Supreme Court of California reviews the earlier decisions, and, after holding that the production of a tax deed in evidence establishes a prima facie title, said:

"'But several years subsequent to the foregoing legislation, a statute was enacted providing that the purchaser of property sold for delinquent taxes, or his assignee, must, 30 days previous to the expiration of the time for redemption, or 30 days before he applies for a deed, serve a notice upon the owner. * * * The service of this notice is not one of those matters established prima facie by the deed under section 3786, supra; but it is insisted under section 3787, supra, the deed ipso facto is made conclusive evidence of such service. * * * As already suggested, this enactment of the Legislature requiring notice to be served, etc., is of much more recent date

than section 3787 of the Political Code, and it is very apparent, upon an inspection of this provision, that the Legislature never intended that it should come within the purview of that section. It certainly should not be held by this court to be embraced within the rules of evidence there provided, in the absence of an express declaration to that effect, for the section is severe and rigid in its operation.' * * * It is evident that the Legislature intended each notice to contain the same statement of the amount due * * * at the date of the sale. * * * The point that the notice fails to conform to the law, in that it contains a statement, in effect, that the whole tract will be sold to the purchaser who is willing to pay the amount due, etc.. is well taken, for the reason that no competition is invited. As said in section 80 of Black on Tax Titles, page 103: "The notice must also follow the statute in stating whether the whole tract will be sold, or an undivided interest in it, or a designated portion of it, or as much of it as may be found necessary. If the collector gives notice of a sale which in this respect will exceed his authority, it is void.' The statement in the notice that sale would be to the bidder who will pay the amount due on the bond, together with the cost of the publication of this notice, is also an incorrect statement of the terms of the sale as required by law."

Here appellants failed to submit any evidence that any notice of sale was given, or that the notice of sale which may have been given was such as complied with the requirements of the statute. They therefore failed to show any title under the tax deeds upon which they rely, or under the deeds from the tax collector to Turner and Busano, to which reference has hereinbefore been made. See, also, Davis v. Peck, 165 Cal. 353, 132 Pac. 438; Strauss v. Canty, 169 Cal. 101, 145 Pac. 1012; Johnson v. Taylor, 150 Cal. 201, 88 Pac. 903, 10 L. R. A. (N. S.) 818, 119 Am. St. Rep. 181; Krotzer v. Douglas, 163 Cal. 49, 124 Pac. 722. Another grave defect apparent is that the assessment for a large part of the property involved was made against M. L. Rogers, notwithstanding the fact that the assessment roll showed that the lands described had been conveyed by deed from S. Webber Parker who gave the mortgage for $48,000, to the Hornitos Gold Mining Company. The assessor does not appear to have had authority to assess the lands against M. L. Rogers.

Again, on the face of the tax roll Rodgers' name appears as M. L. Rogers, and in subsequent documents it was spelled Rodgers and Rogers. There is no evidence to show that notice of the proceedings required to be given by the statute was given to Rogers or Rodgers. Henderson v. De Turk, 164 Cal. 296, 128 Pac. 747.

It is urged that an action to quiet title cannot be maintained, unless the title of the plaintiff by occupancy has ripened into a title by prescription, or, if based upon color of title, by the payment of taxes. Appellants cite section 1006, California Civil Code, which contained the general provision that occupancy for any period confers a title sufficient against all except the state, and those who have title by prescription, with the proviso added in 1915 to the effect that title conferred by such occupancy shall not be a sufficient interest in real property to enable the occupant or his privies to maintain an action to quiet title under the provisions of section 738 of the Code of Civil Procedure of California, unless such occupancy shall have ripened into title by prescription. Discussion of this statute is irrelevant, because appellee makes no claim of title by adverse possession, but predicates her right

upon the statutes of California (sections 318, 319, 320 and 321, of the Code of Civil Procedure), which refer to actions for the recovery of real property or the possession thereof.

[4] It is said that a stockholder of a corporation which has forfeited its charter cannot as a corporation convey real property of the corporation, and that one not shown to be a director in office at the time of the forfeiture of the charter of the corporation cannot properly execute a deed as president and trustee. The evidence, however, shows that at the time of the execution of the deed of March 10, 1915, S. W. Parker was the president of the Hornitos Gold Mining Company and owner of all of the capital stock of the corporation. We believe that he had ample power to do with the property of the corporation and to make conveyance of property, and that it is not in the power of any one to complain of any disposition made by Parker of the property, except, of course, creditors existing at the time of the disposition. Havemeyer v. Superior Court, 84 Cal. 327, 24 Pac. 121, 10 L. R. A. 627, 18 Am. St. Rep. 192; Civil Code Cal. § 400; Reed & Co. v. Harshall, 12 Cal. App. 697, 108 Pac. 719; Relley v. Campbell, 134 Cal. 175, 66 Pac. 220; Deming v. Maas, 18 Cal. App. 330, 123 Pac. 204.

[5] Passing next to the unpatented mining claims: It is urged that an adverse claimant must be a citizen of the United States, or must have declared her intention to become a citizen of the United States. That is the rule, doubtless, where the adverse claimant endeavors to prosecute an adverse suit against one who applies for a patent under the mining laws of the United States, and wherein such adverse claimant seeks to obtain title to the mining claim for himself or herself. On the other hand, an alien is not prevented from owning unpatented mining claims, and an alien so owning may protect his property rights in the mining claims in adverse proceedings before the Land Department of the United States or in the courts, although he may not acquire title from the United States through such proceedings. Altoona Q. M. Co. v. Integral Q. M. Co., 114 Cal. 100, 45 Pac. 1047.

It is urged that, where the defendants apply for patent, the plaintiff in a suit pending prior to such application should, by supplemental proceedings, base the existing suit upon the rights granted by section 2326 of the Revised Statutes, and have the controversy determined accordingly. This may be accepted as correct where the adverse claimant is lawfully qualified to receive a patent from the United States, and, as already indicated, where she seeks such patent in the adverse suit. But the proposition is not pertinent to the case before us, for here the adverse claimant is not qualified to receive patent from the United States, and has not sought such patent in these suits, but only endeavors to protect her property from being unlawfully taken from her, and from having a cloud put upon the title by the unlawful acts of the appellants.

It is said that, the Josephine location being in fieri and the plaintiff having filed no supplemental pleading, there was no authority in the District Court to determine that the title to the mining claims vested in the plaintiffs. But the title involved in this controversy is not in fieri. There never has been a determination that the title to the fee in the

mining claims involved was in the appellee, but merely that as against these appellants appellee has the valid and legal title to the mining claims involved. It is therefore of no concern to the United States, other than to be advised to whom the mines are awarded by the court, to the end that the general government may not issue patent to a party not entitled to the same. Had the United States issued patent to appellants, then Ellen Peterson, by supplemental pleading, could obtain a decree that the appellants were holding such title in trust for her.

It is apparent that the mining claims were located as required by law, and that appellee or her grantors were in possession for over five years, and did the necessary assessment work upon the claims until 1916, when appellants interfered with her and in effect ousted her from possession.

We find no error in the decree of the District Court.

Affirmed.