[Civ. No. 897.   Third Appellate District (First District No. 974).—
February 23, 1912.]

## MARY A. DEMING and CLARA J. DEMING, Respondents, v. LOUIS MAAS et al., Defendants; JOSEPH HERRSCHER, Appellant.

LEASE—ACTION ON BOND FOR RENT—SIGNATURE AS PARTNERSHIP—
MODIFICATION OF RENT IN CORPORATE NAME—PERSONAL LIABILITY
—SUPPORT OF FINDING.—In an action upon a lease for rent, and
upon a bond to secure unpaid rent, which was signed by appellant
as "Joseph Herrscher & Co.," which lease was subsequently modified
by consent of appellant to the reduction of rent, under the signature, "For Joseph Herrscher, Inc., Joseph Herrscher," it is held
the evidence in regard to such signature is sufficient to sustain a
finding that the appellant intended to and did bind himself personally to the obligations of the bond, and that he personally assented to the modification of the lease, and that it was brought
about through his personal negotiations with plaintiffs.

ID.—SURPLUSAGE IN USE OF PARTNERSHIP NAME.—Where it appears
that the use of the partnership name was simply to designate the
mere style under which the appellant individually conducted his
own personal business, and that no other person was associated
with him therein, the words "& Co.," appended to his signature to
the bond, may be disregarded as surplusage, and the signature to
the bond so expressed bound the appellant individually to the
terms of the bond.

ID.—USE OF CORPORATION NAME IN MODIFYING LEASE—PERSONAL CONTROL OF WHOLE STOCK—"CORPORATE DOUBLE" OF HIMSELF.—Where
the corporation name used by appellant in securing the modification
of the lease included the use of appellant's own name, and was
signed by his own name for the corporation, and the evidence shows
that he had the personal control of all of its stock and held it all
in his own name, with the exception of five shares, one of which
was transferred to his bookkeeper and four others to members of his
own family, merely to qualify them as directors, it is held that,
under these circumstances, his subscription of the corporate name
to such modification was both the act of the corporation and his act
as an individual. He was, in such case, virtually the corporation
itself, which was his "corporate double."

ID.—EVIDENCE—PROPER ADMISSION OF DOCUMENTS.—The court, under
the legal effect of the evidence concerning the signatures to the bond
and to the written modification of rent, properly admitted each of
them in evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

Jas. P. Sweeney, and Jos. P. Lucey, for Appellant.

Gavin McNab, and B. M. Aikins, for Respondents.

HART, J.—The plaintiffs brought this action against the defendants to recover the sum of $525 for rent alleged to be due said plaintiffs.

The action was tried by the court, without a jury, and the plaintiffs were given judgment in the sum of $575.31.

From said judgment and the order denying him a new trial, the defendant, Herrscher, prosecutes this appeal.

The action is founded on a certain bond, of which more hereafter.

It appears from the complaint that on or about the twenty-fifth day of March, 1907, by a written lease, bearing date March 23, 1907, the plaintiffs demised and delivered into the possession of the defendant, Mass, certain premises situated in the city of San Francisco, for a period of five years from the first day of April, 1907, at the total rent or sum of $14,000, payable in advance in equal monthly payments. At the same time, and as a part of the same transaction, the defendant, Herrscher, executed and delivered to the plaintiffs a bond, "conditioned, among other things, upon the payment of all rents and sums of money as set forth in said lease."

On the eleventh day of December, 1907, the terms of the lease above mentioned were so modified as that the rent was reduced for the year beginning with the fifteenth day of December, 1907, to the total sum of $2,100, etc. The complaint alleges that the defendant, Herrscher, assented to said alteration of said lease.

The bond referred to was signed and executed by Louis Maas and "Jos. Herrscher & Co."

The agreement modifying or altering the terms of the lease, as indicated, was subscribed and executed by the plaintiffs and "For Jos. Herrscher Co., Inc., Jos. Herrscher."

This action having been instituted against Jos. Herrscher, individually, the amended complaint thus explains the circumstances under which the appellant came to subscribe to the bond a name implying such subscription to be that of a partnership, and to the agreement, modifying the terms of the lease, signed a name implying that such subscription was that of a corporation:

"That said Joseph Herrscher subscribed the said bond in the form and manner following, to wit: 'Jos. Herrscher & Co.' and that the said signature 'Jos. Herrscher & Co.' was then and there the individual trade name, firm and style of said Joseph Herrscher, and was appropriated and used by him exclusively as such trade name, firm and style, and that he signed the said bond in the form and manner aforesaid with the intention of binding himself by such signature, and that it was mutually understood by and between the plaintiffs and the said Herrscher that he and he alone was intended to be designated by such trade name, firm and style, and that plaintiffs signed and delivered the said lease upon the faith of such mutual understanding; and that said Herrscher at the time of signing said bond well knew that plaintiffs so understood said signature by said Herrscher, and said Herrscher well knew at the time of the delivery of said lease that the plaintiffs delivered the said lease upon the faith of such mutual understanding.

"That 'Jos. Herrscher Co., Inc.,' is and at all times herein referred to was a corporation organized and existing under and by virtue of the laws of the state of California; and that said Herrscher at all of said times owned and held, and now owns and holds, the entire capital stock of said corporation, except five shares thereof, which said five shares are held in the names of the directors of such corporation as qualifying shares merely to qualify them holders thereof as directors of said corporation."

The answer denies that "Joseph Herrscher & Co. was at any time the individual trade name, firm and style of said Joseph Herrscher or that he signed the said bond with the intention of binding himself by such signature," and denies that Herrscher, "as surety, or otherwise, assented to the alteration in said lease."

The court found that "said Joseph Herrscher subscribed the said bond in the form and manner following: 'Jos. Herrscher & Co.,' and that the said signature, 'Jos. Herrscher & Co.' was then and there the individual trade name, firm and style of said Joseph Herrscher, and was appropriated and used by him exclusively as such trade name, firm and style, and that he signed the said bond in the form and manner aforesaid with the intention of binding himself by such signature, and that it was mutually understood by and between the plaintiffs and the said Herrscher that he, and he alone, was intended to be designated by such trade name, firm and style, and that plaintiffs signed and delivered said lease upon the faith of such mutual understanding," etc. The court further found that the plaintiffs, at the express request of said Herrscher and without further consideration, agreed to and did reduce the rent reserved in said lease; that said Herrscher, by signing the writing noting the alteration in said lease, as follows: "For Jos. Herrscher Co., Inc., Jos. Herrscher," assented, as surety upon said bond, to the alteration in said lease; that " 'Jos. Herrscher Co., Inc.,' is and at all times herein referred to was a corporation organized under and by virtue of the laws of the state of California, and that said Herrscher at all of said times owned and held, and now owns and holds, the entire capital stock of said corporation, except five shares thereof, which said five shares are held in the names of the directors of such corporation as qualifying shares, namely to qualify them holders thereof as directors of said corporation."

The contention is that the foregoing findings are not justified by the evidence. In other words, the appellant asserts: 1. That the evidence does not show that Herrscher intended to bind himself by said bond or that he did do so. 2. That if he did thus personally bind himself, there is no evidence which supports the finding that he assented to the modification of the lease, to secure the fulfillment of the terms of which the bond was given.

We are unable to agree with the appellant's contention. The evidence sufficiently supports the findings referred to.

The entire transaction seems, indeed, to have been one conducted and consummated between the appellant and the lessors. Maas, it would seem, was only nominally interested

in the lease.  However that may be, the court was justified in finding from the evidence that Herrscher not only intended to bind himself personally by the bond but did do so, and later personally assented to a modification of the terms thereof by subscribing to the written instrument containing terms to that effect.  And it is quite clear, from all the circumstances of the several transactions, that Earsman, the agent of plaintiffs, who conducted the negotiations on their behalf, was given to understand by Herrscher that his purpose was to bind himself personally as surety for the payment of the rent.

Earsman testified that he first heard of the appellant and not of Maas as the party desiring to lease the premises.  He called upon Herrscher, talked with him about the property and the leasing thereof, and then accompanied him to the premises so that he (Herrscher) might inspect the same.  Herrscher "was the only man I dealt with in renting this place to Maas," he testified.  "I discussed the terms with Herrscher and agreed upon them.  He was to be surety for the tenant, Louis Maas, who was an employee of his, and his name was used to fill in.  I was told this by Herrscher and Maas.  I told them before the execution of the lease and the bond that I would not lease the premises unless a bond was given.  I gave the keys to Mr. Herrscher about the end of August."  Earsman prepared the lease and the bond, and when he presented the last-mentioned document to Herrscher for his signature, the name of the surety being, so he testified, left blank in the body of the instrument, the latter instructed him to insert in said blank in said bond the name, "Jos. Herrscher & Co."  The appellant at one time had a partner, but he told Earsman, at the time of the execution of the bond, that said partner had withdrawn from the firm.  After the execution of the bond, Herrscher paid the balance of the rent, $190, for the month of March, 1907, said rent being payable in advance.

The witness, Landis, bookkeeper for the Joseph Herrscher Company for five years up to the time of the trial, testified that said company (a corporation), consisted principally of the appellant.  There were, he said, one thousand shares of stock in said company, and all those shares but five were owned by Herrscher.  The witness himself and four others (mem-

bers of Herrscher's family) each owned a share, having acquired the same for the sole purpose of qualifying them as directors. "I recollect," he further testified, "Mr. Earsman bringing papers to Mr. Herrscher's, at Church and Market streets." He further stated that, "as bookkeeper for *Mr. Herrscher,* he received the rents from the building (on the premises in question) after they were collected and credited them on the books. Mr. Maas was in Mr. Herrscher's employ at that time as salesman."

Maas, the nominal lessee, testifying as a witness for appellant, declared: "I was an employee of Joseph Herrscher at that time [referring to the time of the making of the lease and bond]. I signed that document [the lease] at the request of Mr. Herrscher. . . . My interest at first was this: I negotiated for the lease with the consent that *Mr. Herrscher would go on my bonds.* I was not to have any interest in the premises more than my rental interest in it—that is, in subrenting the premises. I was not to receive anything from that in addition to my salary as working for Herrscher. I was to receive no share in the profits. . . . *I never received any rents.* Mr. Herrscher negotiated for the reduction of the original rent asked. . . . Mr. Herrscher was the one who decided the terms of the contract with regard to the amount of rent and with regard to everything I left it entirely to Mr. Herrscher."

The appellant testified that "there is a corporation in which I am interested, known as 'Jos. Herrscher & Co.'; that was in existence at the time this lease and bond were executed. *Nothing was said about the corporation going on the bond.* When the lease and bond were presented to me with the name 'Jos. Herrscher & Co.' written in, I called Mr. Earsman's attention to that fact. He said that the lease [bond?] was already made out 'Jos. Herrscher & Co.'—never mind—for me to sign exactly as he had written it out on top, which I did—signed it exactly as he told me to sign it. There was no such firm as Joseph Herrscher & Co. in existence."

The foregoing statement of the evidence, in substance, is, we think, sufficient to show that the court was justified in not only finding that the appellant intended to bind himself personally to the obligations of the bond, but that he did do so, and, further, that he not only personally assented to a modification of the terms of the lease, but that such alteration was

brought about solely through his own negotiations with plaintiffs.

If any doubt could arise from the testimony produced by plaintiffs upon the question whether appellant intended to and did personally bind himself on the bond, that doubt is certainly removed by his own admissions. He testified, as seen, that nothing was said about the corporation going on the bond and that there was no partnership known as "Jos. Herrscher & Co." in existence when the transaction took place. He signed the bond in the name of a partnership which had no existence, but in doing so signed his own name. The circumstances under which he subscribed that name to the bond clearly disclose his intention, for had he intended to thus bind the corporation and not himself in his individual capacity, he would undoubtedly have so announced, and refused to subscribe either his individual name or that of a partnership having no existence when the instrument was submitted to him for his signature and execution. At least this would have been the natural and sensible course of a sensible and honest business man having no intention of binding himself as an individual and who was acting in good faith in the transaction. Another circumstance of potent significance bearing upon the question of his intention is the fact, not disputed, that he was interested in the lease—indeed, if not in reality the sole lessee, he was a joint lessee with Maas. It is quite reasonable to suppose from this fact that he would be perfectly willing, and, in truth, intended to bind himself personally for the rent reserved in a lease in which he was more vitally interested than any other person, except, perhaps, the lessors. But the very fact itself that he signed the bond is sufficient to bind him, whatever may have been his intention, notwithstanding that, in signing the bond, he unnecessarily added the words "& Co." to his own name. If, as he testified, there was no partnership in existence by the name of "Joseph Herrscher & Co.," then the words thus added to his name as subscribed to the bond were superfluous and surplusage, are perfectly meaningless and without legal or any significance as so employed, and can, therefore, in no way operate to release him from personal liability on the bond.

Nor, under the evidence, can the plea that, because the instrument changing the terms of the lease was subscribed by

the appellant as "Jos. Herrscher Co., Inc.," be successfully set up in support of the position that he did not personally assent to such modification.

No one will dispute the very obvious proposition that a guarantor is released from liability by any material alteration of the terms of the contract guaranteed, where such alteration is made without his consent.

But we think that it appears very clearly from the evidence that Herrscher consented to the change in the terms of the lease involved here.   In the first place, it is to be noted, in this connection, that the proof shows that Herrscher was himself, practically, the corporation.   He owned all but five of the one thousand shares of stock for which the corporation was capitalized, and the shares thus otherwise owned had been given or transferred to the holders thereof for the single purpose of completing the machinery essential to the operation of the corporation.   Under these circumstances, the subscription of the corporation's name to the writing effecting the alteration in the terms of the lease was at one and the same time both the act of the corporation and his act as an individual.   Being practically owner of all the stock, he was virtually the corporation itself, or, as the cases put it, the corporation was his "corporate double."   (*Relley* v. *Campbell,* 134 Cal. 175, [66 Pac. 220] ; *Rutz* v. *Obear,* 15 Cal. App. 436, [115 Pac. 67].)

That, in point of fact, the appellant did personally consent to the modification of the lease, is a proposition that offers no possible pretext for debate.   Maas testified, as we have shown, that Herrscher was the person most vitally interested in the lease.   In fact, Maas said that he himself had no real interest in the lease and that Herrscher was the actual lessee.   The latter addressed a letter (over the signature of the corporation or, to speak more accurately, over his corporate name) to the agent of the lessors, asking for a reduction of the rent, and eventually, after further negotiations, succeeded in having the rent lowered.   For the corporation he signed the agreement changing the lease in that regard.   Manifestly, under these circumstances, it would be absurd to say that, as the corporation, he consented to the alteration, but that, as an individual, he did not.   In other words, he was himself, to borrow a colloquialism, the "body, breeches and soul" of the corporation—that is, the two were so inseparably linked to-

18 Cal. App.—22

gether that the corporation could do no business or perform no act within the scope of its authority without such business or such act being solely for and that of Herrscher himself, and, having, as seen, personally conducted all the negotiations for himself as the corporation, it would certainly involve a palpable as well as a ridiculous solecism in the irresistible logic of the situation as it is disclosed by the circumstances presented here to say that both he and the corporation did not at one and the same time, as one and the same act, agree to a modification of the lease that would and did result in lessening, in a ratio equal to the extent of the reduction of the rent, the burden of his or its (in whatever gender it may please him to say that he assumed the obligation) liability on the bond guaranteeing the payment of the stipulated rent.

But we need consider the evidence in detail in this opinion no further. It is sufficient to say, generally, in concluding upon the question whether the findings essential to the support of the judgment are justified by the evidence, that the record is pregnant with circumstances and statements, to some of which we have not specifically adverted here, showing very clearly that the appellant personally executed the bond, personally assented to the alteration of the lease, and is, therefore, personally compellable under the obligation so assumed to execute and make good the indemnity for which he thus became personally responsible.

It is further objected that the court committed error seriously prejudicing the rights of the appellant by admitting in evidence the bond to which the name of "Joseph Herrscher & Co." was subscribed and the written instrument modifying the lease, whereby the rent was reduced. The objection to these documents was based upon the general grounds that they were irrelevant, immaterial and incompetent. The court made no mistake in receiving these instruments in evidence, as must be apparent from the conclusion at which we have arrived as to their legal effect upon the parties to this action.

The judgment and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.