[L. A. No. 5921. In Bank.—August 31, 1921.]

# BYRON ERKENBRECHER, Appellant, v. DANIEL G. GRANT, Respondent.

[1] CORPORATIONS—DISREGARD OF ENTITY—FRAUD.—While it is the general rule that a corporation is an entity separate and distinct from its stockholders, it is also equally well-settled that both law and equity will, when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice, disregard such distinct existence, and treat them as identical.

[2] ID.—ESSENTIALS.—In order to cast aside the legal fiction of distinct corporate existence as distinguished from those who own its capital stock, it is not enough that it is so organized and controlled and its affairs so managed as to make it merely an instrumentality, conduit, or adjunct of its stockholders, but it must further appear that they are the business conduits and *alter ego* of one another, and that to recognize their separate entities would aid the consummation of a wrong.

[3] ID. — PURCHASE OF NOTES — GUARANTOR AS SOLE STOCKHOLDER — NONPAYMENT — CONTRIBUTION — STATUTE OF LIMITATIONS.—Where a corporation purchased notes with money advanced by one of the guarantors, the fact that the guarantor was the sole stockholder of the corporation and had transferred to it all of his property did not, on the theory that the corporation and guarantor were identical and not separate entities, make such purchase a payment of the notes by the guarantor and forthwith set in motion the statute of limitations against any claim for contribution from the co-guarantors, in the absence of any showing of fraud in either the organization of the corporation, the transfer of the property or the purchase of the notes.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

A. L. Abrahams and P. B. D'Orr for Appellant.

Albert M. Cross, Isidore B. Dockweiler, G. C. O'Connell and Dockweiler & Dockweiler & Finch for Respondent

SHURTLEFF, J.—This appeal is from a judgment in defendant's favor in an action brought against him to en-

force contribution as a co-guarantor with plaintiff and others of three certain promissory notes.

The defense urged in the answer and at the trial, and insisted upon here, is that the statute of limitations has barred the action.

The case was heard by the district court of appeal (first district, division one), and the judgment of the lower court affirmed. Thereafter the cause was transferred to this court, and the judgment again affirmed. The judgment here, and likewise the judgment of the district court of appeal, was grounded upon the assumption, the record failing to show the date of the filing of the original complaint, that the action was commenced January 28, 1918, the date upon which the amended complaint was filed. The appellant, upon discovering this omission, sought a diminution of the record, and to that end produced and filed here a certified copy of the original complaint, at the same time moving, which motion was granted, for an order vacating the said judgment of this court. The record, as thus corrected, establishes, which is a controlling circumstance, that the date of filing the original complaint was December 13, 1917. The following are the material facts of the controversy, the statement of which, with some changes and additions, is taken from the opinion of the district court of appeal:

On September 17, 1913, at San Francisco, California, the Madera Realty Company, a corporation, executed its three certain promissory notes, each for five thousand dollars, and payable as follows: One on or before December 15, 1913, and the remaining two on or before January 15, 1914. Each of said notes was indorsed and its payment guaranteed by the plaintiff, defendant, and several others. Payments were made on account of the note due December 15, 1913, but no payment was made upon the other two. After their maturity, the Navilla Investment Company; a corporation organized under the laws of this state, and hereinafter called the company, took an assignment of the notes from the holders thereof, the note first maturing being assigned on April 1, 1914, and the others on January 17, 1914. At all the times embraced in the period covering the transactions material to the inquiry plaintiff was the owner of all the outstanding shares of the capital stock of the company, some of which, though standing upon its books

in the names of others, were in fact held in trust for plaintiff. Plaintiff was at all times in control of and dictated the management and affairs of the company and advanced it the moneys which it paid for said notes when they were assigned to it, the company having theretofore acquired all of the assets of plaintiff, who at that time and at all times mentioned in the pleadings was making use of the company for the purpose of conducting his business for his own personal convenience. The company purchased the notes for the reason that the then holder of them was pressing plaintiff for payment as an indorser. On November 17, 1917, plaintiff paid the company the full amount then due upon the notes, not in cash, but by the company charging the account of the plaintiff with such amount, his account at that time showing a credit balance in his favor in excess of the amount then due and unpaid on the notes.

The trial court found the foregoing facts, and also made a finding that plaintiff's cause of action was barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure, which was the only provision of the statute of limitations set up in the answer, and rendered judgment accordingly in favor of defendant. It is from this judgment that this appeal is prosecuted.

Defendant contends that the foregoing facts establish that the company and plaintiff were not separate entities, but one and identical, and that, in legal effect, when the company took assignments of the notes, it amounted to payment by plaintiff, that such payment extinguished them for all purposes, and forthwith set the statute of limitations in motion against any claim or right he might have against defendant for contribution, and that the "only cause of action which accrued to plaintiff against the defendant was upon *assumpsit,* which the law implies, arising where one of two or more joint obligors is compelled to pay more than his share of the obligation, and therefore the plaintiff's cause of action was barred absolutely two years after he so took up the notes and had the same assigned to his company."

We cannot concede the correctness of defendant's contentions.

[1] While it is the general rule that a corporation is an entity separate and distinct from its stockholders, it is

also equally well-settled that both law and equity will, when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice, disregard this distinct existence and treat them as identical.

As said in *Colonial Trust Co.* v. *Montello Brick Works,* 172 Fed. 310, [97 C. C. A. 144]: "While we recognize the legal principle that a corporation does not lose its entity by the ownership of the bulk or even the whole of its stock by another corporation, yet it is equally well settled courts will look beyond the mere artificial personality which incorporation confers, and, if necessary to work out equitable ends, will ignore corporate forms."

To the same effect is the following language of Circuit Judge Lurton in *Richmond & I. Construction Co.* v. *Richmond N., I. & B. R. Co.,* 68 Fed. 105–108, [34 L. R. A. 625, 15 C. C. A. 289, 292]: "The contract company was a legal corporation, wholly distinct and separate from the railroad company. The fact that the stockholders in each may have been the same persons does not operate to destroy the legal identity of either corporation. Neither does the fact that the one corporation exercised a controlling influence over the other through the ownership of its stock or through the identity of stockholders, operate to make either the agent of the other, or to merge the two corporations into one."

Again, in *Home Fire Ins. Co.* v. *Barber,* 67 Neb. 644, [108 Am. St. Rep. 716, 60 L. R. A. 927, 93 N. W. 1024], it is said: "Equity will look behind the corporate entity, and consider who are the real and substantial parties in interest, whenever it becomes necessary to do so to promote justice or obviate inequitable results," and the law will follow equity in this respect.

There is no occasion for the application of this rule of unity in the present case. The facts do not warrant, much less demand, it. There is no finding, neither is there any evidence, to the effect that the organization of the company by plaintiff and the transfer to it by him of all his property were in any manner fraudulent or prompted by dishonesty, or that the company, in purchasing the notes, which, as we have seen, were indorsed by both plaintiff and defendant, committed or intended to commit any fraud whatsoever. It is true that plaintiff personally advanced

the money with which the company purchased the notes, but such advancement was entirely consistent with honesty and fair dealing, and bears no earmarks other than those of an open, legitimate transaction. It liquidated the obligation so far as the then owners of the notes were concerned, and in no respect whatsoever wronged or prejudiced the defendant, who was an indorser upon each of the notes, and upon failure of the maker to discharge them, became responsible for the payment thereof.

The finding of the trial court that the company acquired the notes because the then holder of them was pressing plaintiff in his capacity as indorser for payment does not negative the separate entity of the company. In the absence of any dishonest motive or intention to accomplish a wrong, and, as we have said, none was proven, we fail to discover any objection whatever to plaintiff directing the company to purchase the notes. If it be assumed that he caused their purchase for the reason that it was not then convenient for him to meet his obligations as indorser, there would still be wanting the elements to which we have referred, and the presence of which we hold is essential to justify treating plaintiff and the company as identical—as a unit. [2] In order to cast aside the legal fiction of distinct corporate existence as distinguished from those who own its capital stock, it is not enough that it is so organized and controlled and its affairs so managed as to make it "merely an instrumentality, conduit, or adjunct" of its stockholders, but it must further appear that they are the "business conduits and *alter ego* of one another," and that to recognize their separate entities would aid the consummation of a wrong. Divested of the essentials which we have enumerated, the mere circumstance that all the capital stock of a corporation is owned or controlled by one or more persons, does not, and should not, destroy its separate existence; were it otherwise, few private corporations could preserve their distinct identity, which would mean the complete destruction of the primary object of their organization.

There is abundant authority in addition to the cases we have mentioned, sustaining our view of the law. Indeed, our attention has not been directed to a case holding the contrary. While some text-books contain passages pointing to a different conclusion, an examination of the cases

cited by the author demonstrates that they not only do not support the text, but are predicated upon a version of the law similar to the one herein declared. Likewise, some of the decisions contain passages which, when taken alone, lend some basis for a different interpretation, but, when read in the light of the facts of the case, which is always essential when construing and applying judicial expressions, it is clear there was present the demand that corporate entity be ignored in order that fraud or some kindred wrong be defeated. All of the cases, so far as we are advised, in our own and other jurisdictions, which involved the abolition of corporate entity and the facts which warrant it, such as *Kelly* v. *Ning Yung Ben. Assn.*, 2 Cal. App. 460, [84 Pac. 321], *Chater* v. *San Francisco Sugar etc. Co.*, 19 Cal. 220, *Shorb* v. *Beaudry*, 56 Cal. 446, *Deming* v. *Maas*, 18 Cal. App. 330, [123 Pac. 204], and *Rutz* v. *Obear*, 15 Cal. App. 435, [115 Pac. 67], are in thorough accord with what precedes, and support the rule we announce.

*Llewellyn Iron Works* v. *Abbott Kinney Co.*, 172 Cal. 210, [155 Pac. 986], is in harmony with what we have said touching the rule governing the rejection of corporate entity. In that case Abbott Kinney, the president of the Abbott Kinney Company, verified an answer of the latter in an action brought against it for an unpaid subscription to the capital stock of a certain corporation, notwithstanding, as Abbott Kinney then knew, the company had at a prior date forfeited its charter, the result of which was that Kinney had knowingly and deliberately led the plaintiff to believe that the corporation was an existing one, and induced plaintiff to prosecute its action to final judgment. An estoppel was asserted, concerning which the court said: "To countenance this conduct would be to permit Abbott Kinney and the defendant corporation to escape the payment of a just debt, . . . by the concealment of a fact which it was incumbent on Abbott Kinney to disclose. . . . We entertain no doubt of their [findings] sufficiency to raise an estoppel against Abbott Kinney personally. And upon a proper showing that the Abbott Kinney Company, a corporation, was but the instrumentality through which Abbott Kinney for convenience transacted his business, by all of the authorities not only equity, looking through form to substance, but the law itself, would hold such a corporation

bound as the owner of the corporation might be bound, or, conversely, hold the owner bound by acts which bound his corporation. (Citing cases.) But the evidence, however, is insufficient to establish this unity of interest and ownership, the only stipulation upon this matter being that 'Abbott Kinney was and now is the president of the Abbott Kinney Company, a corporation, and was and is the owner and holder of the greater portion of the stock of the said Abbott Kinney company, a corporation.' '' We have quoted thus at length from the Llewellyn case in order to point out that it involved an *estoppel,* which, had it been upheld and applied, would have thwarted a fraud, which otherwise would have been effectual.

Counsel for respondent direct our attention to a number of decisions of this court, which they earnestly maintain support their contention that the assignments of the notes on the 17th of January and the 1st of April, 1914, to the company was in reality absolute payment, and accomplished their extinguishment, but we think each of such cases is clearly distinguishable from the one we are considering, and that none of them is controlling here.

[3] The rule that payment by one of several joint obligors of the obligation, or by any one acting for him, or who takes an assignment of the obligation, extinguishes it, is not applicable here, for such payment or assignment is by, or runs to, one who is responsible, which was not the case here. There was no duty whatsoever resting upon the company to pay the notes in question, and it is for this reason that *Wright* v. *Mix,* 76 Cal. 465, [18 Pac. 645], *Gordon* v. *Wansey,* 21 Cal. 77, *Yule* v. *Bishop,* 133 Cal. 574, [62 Pac. 68, 65 Pac. 1094], and similar cases, are not decisive of this controversy. Equally without application, and for the same reason, are the numerous cases to the effect that payment by a surety puts an end to the obligation. In the instant case, we repeat, the company was in no manner liable, but was a stranger to the obligations; it did not pay, but purchased the notes, and under such circumstances it cannot be said, upon reason or authority, they were extinguished.

The court found, and there is a similar finding, except as to dates, as to each of the notes, ''That on the seventeenth day of January, 1914, the Navilla Investment Company

purchased said note.'' Under the facts appearing, we hold it was an absolute, *bona fide* purchase by the company acting in its separate entity, and by reason thereof, as was its intention, it became, in its distinct capacity, the owner and holder of the notes. (*Frank* v. *Brady,* 8 Cal. 47.)

Having determined that the company and the plaintiff were separate entities, it follows that section 1473 of the Civil Code, which declares that ''full performance of an obligation, by the party whose duty it is to perform it, or by any other person on his behalf, and with his assent, if accepted by the creditor, extinguishes it,'' is not applicable, for the reason that, as we have said, the transaction was a *purchase* and not *payment* of the notes by the company, and that there was no evidence of an intention upon the part of the company, or of the assignor and holder, to extinguish them. As previously stated, there was no ''duty'' resting upon the company to pay the notes; neither was the act of the company a payment on behalf of the plaintiff and with his assent, one or the other of which conditions is essential to bring the transaction within the provisions of the section. (Civ. Code, sec. 1473.) There was manifest here a definite design on the part of the company to keep the notes alive and hold them as *its* property, all of which, we declare, did not or could not prejudice the defendant and was not to his disadvantage

While the court found that the payment of the notes by the plaintiff on November 17, 1917, was not made by him as indorser, we think such finding was error and that there is no substantial evidence supporting it. In fact, the record establishes the contrary. The finding is predicated upon the theory, which we declare to be untenable, that the company and plaintiff were identical.

From what precedes, it follows that when, on November 17, 1917, plaintiff paid the notes to the company, which was then the sole owner of them, the effect was to vest in him the right to compel contribution from the defendant, his coindorser, for his proportion of the amount so paid, which he is endeavoring to do in this action, and the same, having been commenced December 13, 1917, was in time. (Code Civ. Proc,. sec. 339.)

Judgment reversed.

Shaw, J., Sloane, J., and Wilbur, J., concurred.