[Civ. No. 5496. First Appellate District, Division One.—August 17, 1927.]

WILLIAM A. WITTMANN, Respondent, v. MAJOR WHITTINGHAM, Appellant.

George Beebe and J. Marion Wright for Appellant.

Wheaton A. Gray and J. M. Fursee for Respondent.

CAMPBELL, J., *pro tem.*—This is an appeal from a judgment in favor of respondent entered upon the verdict of the jury awarding $2,000 damages against appellant, in an action to recover $23,080.

Appellant urges as grounds for a reversal of the judgment: 1. The verdict is contrary to the evidence and there is a variance between the pleadings and the proof (a) The evidence of plaintiff does not establish any definite or valid contract on which he might sue; (b) The evidence and the special verdict of the jury show that the plaintiff was employed by the corporation and not by Whittingham individually,

and that the corporation and not Whittingham discharged him; (c) There is no evidence of any legal damage sustained by plaintiff; 2. The court erred in the admission of evidence; 3. The court erred in its instructions; (a) Instructions were given at the request of plaintiff which were erroneous; (b) The court improperly modified instructions requested by defendant; (c) The instructions as a whole were confusing, and in some particulars failed to enlighten the jury on some issues.

As disclosed by the evidence, in 1919, appellant gave respondent employment as a bookkeeper, at the same time respondent had other persons for whom he did bookkeeping. This ran along until about August, 1920, when appellant discussed with respondent the matter of forming a corporation. The business was growing and appellant desired to expand. Respondent continued in the employment of appellant as bookkeeper until the corporation was formed in October, 1920, when respondent was made a director of the corporation and its secretary and eleven shares of stock were given to him by appellant, one share of which was given him so that he could qualify as a director and the remaining ten, as appellant claims, so that respondent would feel an interest in the business, but, according to respondent, in payment for services performed. From and after the incorporation of "The Whittingham Printing Company," respondent was paid $40 a week by the corporation. When appellant decided to incorporate his business it was agreed between appellant and respondent that respondent should give up all his other business and serve appellant as an accountant, bookkeeper, and as general manager and should receive as compensation $40 per week, and as a further compensation respondent should have the privilege of purchasing sixty shares of stock of the Whittingham Printing Company, a corporation, soon to be formed, and as a part of such agreement it was further agreed and understood that respondent should give the defendant his note for $4,800, with interest at six per cent per annum, and that respondent should not be required to pay anything on said note, but that he should remain in the employ of appellant until the dividends and profits of the stock were sufficient to pay off the note. When the note was paid off by the dividends and profits, it was to be given up and canceled and the stock,

which was issued to respondent and held by appellant as collateral was to be returned to respondent. There seems to be no special dispute over the fact of the contract, nor as to its terms. Appellant contending that respondent was to work as a salesman and not as a bookkeeper and manager, and that he was to work in the employ of the corporation and not in the employ of appellant; that respondent's services were to be satisfactory to appellant and that the services performed were unsatisfactory to him and therefore he had the right to discharge him, and, further, that the contract was entered into with the corporation, which is not made a party to the suit.

The shares of stock of the corporation were of the par value of $100 each, and the authorized capital stock was 750 shares, 503 of which were issued under permit to issue that amount by the corporation commissioner. In December, 1921, the date of the alleged breach of the agreement, the books of the corporation show the stock to be issued as follows: Appellant Major Whittingham, 340 shares; W. F. Whittingham, 90 shares; respondent William A. Wittmann, 71 shares; George Bebee, 1 share, and J. M. Wright, 1 share. During the year 1921, up to the time when respondent retired as a director, the directors were appellant Whittingham, respondent Wittmann, and George Beebe, J. M. Wright being elected as a director to replace respondent when the latter retired from the board.

Respondent continued in his employment until December 31, 1921, when he was discharged. Appellant thereafter transferred the stock issued to respondent and which he held as security for respondent's note to himself. Appellant denies that he employed respondent, but asserts that the corporation did; that respondent was not in his employ, but in the employ of the corporation "The Whittingham Printing Company," and, further, that the corporation and not appellant discharged respondent.

The jury returned a verdict for plaintiff and fixed the damages in the amount of $2,000, and returned a special verdict answering certain interrogatories propounded to them as follows: (1) How much money would plaintiff have earned under his agreement of employment with defendant had he not been discharged prior to the expiration of his said agreement? Answer: $2,600. (2) Under plaintiff's

employment with defendant, for what period was plaintiff to be employed? Answer: ·Until 60 shares of stock were paid for by his earned dividends. (3) Under said employment, when did said employment commence? Answer: October 1, 1920. (4) Under said employment, on what date would said employment terminate? Answer: When 60 shares of stock were paid for by dividends earned. (5) From and after September 1, 1920, was plaintiff employed by defendant or by Whittingham Printing Company, a corporation? Answer: Whittingham Printing Co., Inc. (6) Was plaintiff discharged by defendant or by Whittingham Printing Company, a corporation? Answer: Whittingham Printing Co., Inc. (7) Was Whittingham Printing Company, a corporation, owned and controlled by Major Whittingham, the defendant? Answer: Yes. (8) On what date would the dividends or profits of the Whittingham Printing Company have paid for the 60 shares in controversy? Answer: Do not know. (9) What was the actual value of the 60 shares of stock of the Whittingham Printing Company on the date of the alleged breach of the contract by defendant, if you find that it was breached by the defendant? Answer: $6,000. Also give the highest value since the alleged conversion of the stock? Answer: $6,000. (10) What amount of dividends or profits was the plaintiff prevented from receiving by being discharged by defendant? Answer: Estimated $2,000. (11) What were the profits of Whittingham Printing Company, a corporation? Answer: Total to December 31, $18,372.48.

Appellant does not claim that the contract was not entered into, but that the contract is not definite or valid; that the special verdict shows the contract or employment of respondent to have been with the corporation instead of appellant and no legal damage was sustained.

The first complaint under the assignment is that the contract lacks mutuality, and being entirely one-sided, should not stand, and, further, that it had no definite time for its existence.

There seems to be no lack of mutuality in the contract. It is alleged and testified to by respondent, that in consideration of his giving up all other business and serving appellant as an accountant, bookkeeper, and general manager he should receive $40 per week and should have the

privilege of purchasing 60 shares of stock in the corporation to be formed. ██ As to the claim that the contract had no definite time for existence it may be said that according to the contract, as testified to by respondent, the 60 shares of stock were to be delivered to him when the dividends or profits on the stock had paid his note. This is sufficient as to the time of the duration of the contract. In *Brown* v. *Birmingham Water Works Co.*, 169 Ala. 230 [52 South. 915], the court holds that where the contract was to furnish a consumer with water at a specified price as long as she used the premises as a dwelling is not defective for indefiniteness as to the length of time that it was to run. In *Hauser* v. *Harding*, 126 N. C. 295 [35 S. E. 586], the court says: "A contract not to engage in the practice of medicine within a certain territory without specifying any time is not invalid for uncertainty, since it is to be construed as enduring for the life of the promisor." In *City of Superior* v. *Douglas County Tel. Co.*, 141 Wis. 363 [122 N. W. 1023], the court holds that a contract binding a telephone company operating in a city to maintain without charge telephones in the public offices as long as it maintains and operates a telephone exchange in the city, fixes a time for the termination of the contract and the contract is binding. ██ As to the claim that the evidence and the special verdict of the jury show that the plaintiff was employed by the corporation and not by Whittingham individually and that the corporation and not Whittingham discharged him, it may be said that the jury also made a finding that the Whittingham Printing Company was owned and controlled by Major Whittingham, the defendant, and there is sufficient evidence to support this finding. In appellant's opening brief under the heading "Some undisputed facts in the case," he says: "Defendant gave him (plaintiff) work as a bookkeper and at the same time plaintiff had other persons for whom he did bookkeeping. This ran along until about August, 1920, when defendant discussed the matter of forming a corporation. The business was growing and defendant naturally wanted to expand. Up to October 1, 1920, he had been paying plaintiff for doing the bookkeeping, and a few days after that date the arrangement between the two men was entered into verbally. For convenience plaintiff was to be a director and secretary

of the company," and in the record of the testimony of appellant is the following: In speaking of his idea for incorporating his business he said, "If *I have a corporation,* why, you will have to be the goat and be Secretary, Bill," and later on in his testimony appears the following: "Why should you have an account and he not? You were president and he was treasurer, and you were both stockholders? A. Well, it was not supposed that he was to have an account. Judge. Q. Why? A. Because it did not come within the horizon of what I contemplated for Wittmann that he should have an account. Q. That was because you *owned and controlled the whole thing* (the corporation), and nobody should have an account without your consent, is that it? A. *I would say so, yes.*" Further, the note given for the 60 shares of stock was not given to the corporation, but was given personally to Whittingham, who personally held the Wittmann stock. As to appellant's brother's interest, the brother, according to Whittingham's testimony, lives in another state and is not consulted at all by Whittingham as to any act of the corporation, and it does not appear that any stock was ever actually issued or delivered to the brother. The evidence also shows that of the 503 shares of stock—the entire amount issued—500 shares originally belonged to appellant. Appellant, Beebe, his attorney, and respondent were the original incorporators and there was issued one share of stock to each for the purpose of making them directors. Neither Beebe nor respondent had any interest in the business, and appellant testified that he issued 10 shares to respondent that he might be made secretary.

We are of the opinion that there is ample evidence from which to conclude that appellant was the *alter ego* of the corporation, and comes within the rule laid down in *Minifie* v. *Rowley,* 187 Cal. 481 [202 Pac. 673], "Before the acts and obligations of a corparation can be legally recognized as those of a particular person, and *vice versa,* the following combination of ciricumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality or separateness of the person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the

separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.'' (See, also, *Erkenbrecher* v. *Grant*, 187 Cal. 7 [200 Pac. 641]; *Wenban Estate, Inc.*, v. *Hewlett*, 193 Cal. 675 [227 Pac. 723]; *Shorb* v. *Beaudry*, 56 Cal. 450; *Demming* v. *Maas*, 18 Cal. App. 330 [123 Pac. 204]; *United States Farm Land Co.* v. *Bennett*, 55 Cal. App. 304 [203 Pac. 794].) In *Llewellyn Iron Works* v. *Abbott Kinney Co.*, 172 Cal. 214 [Ann. Cas. 1917D, 1050, 155 Pac. 986], the court says: ''We entertain no doubt of their sufficiency to raise an estoppel against Abbott Kinney personally, and upon a proper showing that the Abbott Kinney Company, a corporation, was but the instrumentality through which Abbott Kinney for convenience transacted his business, by all of the authorities, not only equity, looking through form to substance, but the law itself, would hold such a corporation bound, or, conversely, hold the owner bound by acts which bound his corporation.''

As to appellant's claim of error that there is no evidence of any legal damage, it is sufficient to say that appellant in his brief concedes that ''the court properly instructed the jury as to the measure of damages.'' ■ As to the evidence, respondent testified that he had kept his contract faithfully; that appellant had not complained that he was not making good, but that he just discharged him from his employment and took this stock away from him, because he thought that he (respondent) was making too much money; that the business had turned out more prosperous than he thought it was going to; that appellant gave himself such bonuses and such salary that there would be no income or profits. The jury was, therefore, warranted in finding that the defendant had violated his contract.

■ We find no error in the admission of evidence, as assigned by appellant under his second assignment that ''the court erred in the admission of evidence.'' Appellant's principal objection is to the admission of the report of the books of account of the Whittingham Printing Company, made by Ernest E. Godfrey, certified public accountant. The record shows, however, that the evidence complained of, that is, the evidence of a bonus of $7,500 and extra salary of appellant of $750 a month and an additional salary of $1,000 a month, was brought out by questions pro-

pounded to the expert accountant, to which no objections were made. Furthermore, this written report was never read to the jury nor seen by them until it was given to them when they retired to deliberate, along with the other exhibits in the case, under a stipulation by the attorneys for both sides "that the jury may have all of the exhibits."

We do not agree with appellant in his final assignment of error; that the court erred in its instructions; that erroneous instructions were given at the request of plaintiff; that they were improperly modified, and that the instructions as a whole were confusing. The language of the court in *Bogunda* v. *Person,* 71 Cal. App. 105, 110, 111 [234 Pac. 857, 859], is applicable to the instant case and we adopt it here. "But there is still another obstacle in reviewing the objections to the instructions in this case in the fact there is nothing to indicate or show at whose request the instructions were given,—whether at the request of plaintiffs or defendants. The presumption is, therefore, that they were given at the request of defendants. (*Gray* v. *Eschen,* 125 Cal. 5 [57 Pac. 664]; *Sutter Butte Canal Co.* v. *American Rice & Alfalfa Co.,* 182 Cal. 549, 553, 554 [189 Pac. 277].) A party cannot predicate prejudice on erroneous instructions submitted by the court to the jury at his request."

This disposes of the objections urged by appellant, and from what has been said it follows that we find no error in the record.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.