## DOLE REFRIGERATING CO. v. KOLD-HOLD MFG. CO. et al.

No. 4823.

United States District Court
E. D. Michigan, S. D.

July 28, 1949.

Thomas B. Moore, Detroit, Mich., Parker & Carter, Chicago, Ill., for plaintiff.

Whittemore, Hulbert & Belknap, Detroit, Mich., for defendants.

PICARD, District Judge.

Both plaintiff, Dole Refrigerating Company, and defendant, Kold-Hold Manufacturing Company, manufacture refrigerating panels installed in insulated truck bodies or on counters, upon or in which perishable food is placed. Defendant Tranter is the main stockholder and allegedly the alter ego of Kold-Hold Manufacturing Company. Reference to "defendants" will be in the singular.

In 1941 plaintiff threatened action of infringement, claiming that defendant was violating plaintiff's Kleist patents No. 1,824,158 and No. 2,217,702. As a result a contract was entered into by which defendant specifically agreed to cease manufacture of panels covered by those patents. Plaintiff now claims that defendant has breached this contract and by a subterfuge is manufacturing panels which clearly violate the contract terms and the patent rights protected thereby. It insists that while defendant claims to be manufacturing panels under its own McGuffey patent No. 2,287,-941, it does, in fact, but appropriate the main feature of the Kleist patents, to-wit, creation of a vacuum inside the hermetically sealed panels because of which pressure on the outside exceeds pressure from the inside. Plaintiff admittedly produces its vacuum by withdrawing or sucking the air from the chamber between its panels while defendant obtains its vacuum by pressure. Defendant contends,

1. that the vacuum created by its method is not a feature of its invention but merely an incident of manufacture;

2. that while plaintiff's panels do not bulge, defendant's panels do bulge but are controlled by

3. the unique construction of the panels themselves and the coil within the panels.

On the other hand plaintiff is willing to concede that if defendant will refrain from creating or utilizing a vacuum in the manufacture of its panels, defendant would not be infringing but insists that if defendant did this its panels would break open and not be as attractive because of their bulged appearance.

In short, the "vacuum" is the crux of this case for two reasons, first, defendant agreed in its contract to refrain and cease the manufacture of panel or truck plates wherein the result obtained is from the vacuum principle and "the atmospheric pressure on the exterior of the plate is greater than that on the interior of the plate" and second, the necessity to determine whether defendant's admitted vacuum obtained by pressure, does infringe the Kleist patent, which withdraws the air by suction.

More specifically, this is the way both the Kleist and McGuffey panels are made.

For convenience we will refer to the completed unit as a "panel" or "plate." It is usually rectangular in shape and composed of 2 sides of sheet metal which when placed together form a rather large hollow chamber. Between these two sheets refrigerator piping is coiled inside, with metal fins serving to give the panel rigidity and permitting free flow of the eutectic which is a bath or filler of brine in which the coil lies. These cold-conducting fins or "spacers" parallel the coil and are in contact with the panel walls. The two ends of the coil pipe extend outside the panel so that the refrigerant may be pumped through the pipes. There are two Kleist patents—Kleist patent No. 1,824,158 (that has no eutectic at all) and Kleist patent No. 2,217,702, where the eutectic is poured into the space which we have above described as a chamber. The typical truck panel is about 2 feet wide, 4 feet high and 2 to 3 inches in depth. Several may be placed inside a truck and in that way the truck becomes a mobile ice box.

When the device is used in moving vehicles the panels are prerefrigerated and

provide a cold yielding area. The process is to freeze the eutectic solution while the vehicle is not in use, by flowing a refrigerant (usually ammonia) through the coil. Once the eutectic is solidly frozen, the refrigerant ceases to be pumped through and the truck is ready for utilization as a refrigerator truck. Eventually the eutectic melts and the panel loses its refrigerating quality. The panel must then again be frozen and thus the process is continually repeated.

According to the Kleist patent "One of the difficult problems in refrigeration has been to provide a refrigerating device which contains a liquid refrigerant (eutectic), which liquid refrigerant is to be congealed at a very low temperature and held at this low temperature. In such devices heretofore it has not been possible to get a uniform temperature on the outside and it has been difficult to hold the liquid refrigerant and to keep the sides from bulging out and when the liquid refrigerant congeals it has been practically impossible to prevent injury to the device by the expansion. Another problem has been the difficulty of securing an efficient heat transfer relationship between the contacting metal parts of the apparatus." (Words in parenthesis-ours.)

It is precisely these difficulties that the patents in suit avoid by use of the vacuum principle, and it is to be noted that the Kleist patents do not limit the manner of creating a vacuum but specifically provide that the "air is exhausted from between the plates * * * in any desired manner."

When plaintiff manufactures its panels it fills the chamber 9/10th full of eutectic (allowing for an approximate 10 per cent expansion of the liquid on solidification) and then by means of a vacuum pump exhausts virtually all the air remaining in the chamber before hermetically sealing. Because of this vacuum, atmospheric pressure operating on the outside of the panel walls being greatly in excess of that on the inside, the panel is compressed and held virtually flat against the fins surrounding the coil in the chamber. Thus while the eutectic is liquid, despite its sub-

stantial weight and the tendency of the panel walls to relax or spring back into a bow shape from their flat, pressed shape, the vacuum effectively holds the panel flat. When the ice is formed, as previously stated, there is almost a 10 per cent expansion but because of the vacuum (1) the greater volume is accommodated in the void, and (2) the outward bulge is substantially reduced by the external atmospheric pressure. Thus, because bulging and flexing of the metal is substantially lessened, the chance of rupture is reduced and a commercially more desirable piece of equipment is produced. A secondary result of utilization of the vacuum is that the product is more salable, having more "eye appeal."

On the other hand, defendant has abandoned the use of the sharp-cornered rectangular plate (used by plaintiff) in favor of one it calls "stream-lined." This plate has no edges perpendicular to the sides but here the two panels gently curve into each other. Defendant's coil runs from the outer edges of the chamber toward the center. By use of the stream-lined plate which tapers at the edges giving smaller volume at these points, and because of the coil arrangement, freezing takes place from the outside in. The unfrozen liquid migrates to the center where it too ultimately freezes. However, the center of the plate is far more flexible than the edges and thus the bulging and bowing due to expansion during solidification is well within the limits of elasticity. It is before solidification however, that plaintiff claims the infringement takes place.

Defendant's panel once completed is laid on a platen and eutectic pumped into the chamber's capacity. Then comes the vital operation for at this point the panel is pressed flat by force and the eutectic in excess of the capacity of the panel when flat is ejected. Then—and this is also important—while the panel is still under pressure it is sealed. A vacuum is thus created because the sides of the panel have a natural relaxation and the remaining eutectic no longer fills the expanded volume. This leaves a 2 to 5 inch void at the top of the chamber and—ex-

actly as happens in the Kleist patents—the vacuum creates a differential in pressure, with greater atmospheric pressure on the outside than on the inside.

Defendant contends that because freezing occurs at the outer edges first, the liquid can't get to the void and even if it could the void is insufficient to accommodate the 10 per cent expansion on solidification.

There is no denying that defendant has created a vacuum by pressure and that this vacuum performs an important function although only a 4-inch mercury reading is attained. Defendant's vacuum does help to hold the panel sides flat. However, they are not held as flat as in the Kleist patents because the weight of the eutectic and the tendency of the sides to relax cause a very slight bulging thus yielding a vacuum. This was proved when one of defendant's panels was punctured for a hiss of air was heard and the sides bulged considerably more. But there is a very fundamental difference between these panels when prepared for service under the Kleist patents and that of defendant. Under the Kleist patent when the eutectic of plaintiff's panel solidifies, the ice crowds its way into what was the vacuum above in the upper 10 per cent of the chamber. Plaintiff thus makes use of its vacuum to accommodate the expansion on solidification and to hold the panel sides rigid. In the McGuffey (defendant's) panel, however, the vacuum created under pressure is not large enough to accommodate any solidification of eutectic and as proved by the evidence, the coil freezes the eutectic from the outside in, so whatever bulging results is in the center of the panels where such bulging is insufficient to rupture or break the panels. Also the vacuum is not created in defendant's panel until the metal walls *begin* to bulge expanding the void within the hermetically sealed chamber.

We come then to the legal result of this difference in the utilization and functioning of the two vacuums for there is no denying that the defendant agreed not to use the vacuum principle. However, we must look into the entire purpose of the invention and determine whether defendant's use of the vacuum principle infringes. While no eutectic was used in Kleist patent No. 1, 824,158, the one chiefly in question, Kleist patent No. 2,217,702 has a brine filling that takes up 90 per cent of the interior and the purpose of the vacuum is twofold, first, to accommodate the solidification and second, hold the sides rigid against the fins. The Kleist vacuum is considerably greater than the vacuum which results by defendant's pressing. Defendant gets a bulge which it is able to control. Plaintiff's product has no bulge.

But plaintiff claims that what defendant has accomplished is merely an improvement of the Kleist patent and the backbone of both is the use of the vacuum, citing Temco Electric Motor Co. v. Apco Co., 275 U.S. 319, at page 328, 48 S.Ct. 170, at page 173, 72 L.Ed. 298: " * * * that an improver cannot appropriate the basic patent of another, and that the improver without a license is an infringer, and may be sued as such."

In our opinion plaintiff has no monopoly on vacuums and it has long been the rule that the function of a machine cannot be patented. As stated by Justice Brown in Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, 569, 571, 18 S.Ct. 707, 723, 42 L.Ed. 1136, when the Boyden company was sued for infringement of the Westinghouse fluid pressure automatic brake mechanism "To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function."

And from the same case "Conceding that the functions of the two devices are practically the same, the means used in accomplishing this function are so different that we find it impossible to say, even in favor of a primary patent, that they are mechanical equivalents."

The case at bar is not unlike the situation referred to in Tilghman v. Proctor, 102 U.S. 707, 711, 26 L.Ed. 279—cited by plaintiff itself in which there was involved a patent for "manufacturing of fat acids and glycerine from fatty bodies by the ac-

tion of water at a high temperature and pressure."

The court said, "We do not regard the accidental formation of fat acid in Parkins' steam cylinder from the tallow introduced to lubricate the piston (if the scum which rose on the water issuing from the ejection pipe was fat acid) as of any consequence in this inquiry."

Plaintiff in differentiating the Kleist patent from the Finch patent takes advantage of this immateriality.

What about the immateriality of the vacuum in the case at bar?

What if a vacuum does result as part of the process?

Is all future development of these refrigerator panels to be impeded or perhaps completely blocked because some place along the line a vacuum is created?

■ We do not believe that this is the function of the courts in upholding patents and while we do not deem either Kleist patent invalid we nevertheless feel that they have not been infringed because of the admitted novelty of the panel and coil construction of defendant's patent and because the vacuum principle is not utilized by defendant to hold the sides rigid against the fines or accommodate the expanded eutectic on solidification. Whatever use is made by defendant of the vacuum is insignificant and immaterial compared to the important part it plays in the Kleist patent.

We go further. If plaintiff contends that the unique and protected feature of its patent is the vacuum principle itself applied to the refrigerator panels, then plaintiff's patent is invalid, having been anticipated by Manwaring No. 673,561 issued in 1901. Manwaring teaches the use of a chamber, partially filed with water. The water is boiled and the chamber is then hermetically sealed creating a vacuum. No coils or fins are provided for in Manwaring's invention, but the entire unit is placed in a refrigerator to be frozen. The inventor states that the purpose of the vacuum is to prevent rupture of the unit. That's what Kleist says about his vacuum. Thus, Manwaring uses a vacuum, although obtained by a method other than either

plaintiff or defendant in the manufacture of refrigerator panels. Were plaintiff to insist that it is the vacuum and not the use to which it is put that is the most significant, we would be forced to hold the Kleist patents invalid.

### Restraint of Trade

■ Defendant's second contention is that the contract between the parties is unenforcible because in restraint of trade and therefore illegal. Title 15 U.S.C.A. § 1. This reasoning is based upon the very first covenant of the contract whereby defendant agrees to "cease the manufacture and/or sale and/or use"

(a) "of vacuum truck plates wherein the atmospheric pressure on the exterior of the plate is greater than that on the interior of the plate"; and

(b) "that beginning six (6) months from the date of this agreement and continuing thereafter Kold-Hold agrees to discontinue using in all other products handled by Kold-Hold the vacuum principle wherein the pressure of the atmosphere on the outside of the product is greater than that on the inside of the product"; and

(c) that "after expiration of six (6) months from the date of this Contract Kold-Hold will not use the vacuum principle in any of the products handled by Kold-Hold either directly or indirectly regardless of how the difference in pressure between the exterior of the product and the interior of the product is secured."

(a), (b) and (c) are not separated in the contract as they are above, and between (a) and (b) there is the following which we will call (d), the legality of which is not questioned by defendants:

(d) "on and after the date of this Contract, discontinue the manufacture and/or sale and/or use of truck plates embodying the apparatus and/or process and/or method embodied in the claims of the Kleist patent No. 2,217,702 issued October 15, 1940 and of the Kleist patent No. 1,824,158, issued September 22, 1931."

Defendant maintains that while the parties could enter into a contract limited to (d), the inclusion of (a), (b) and (c) above,

is too broad, and restrains not only infringement of the Kleist patents, but applies to all other products of defendant company.

It was agreed before the case was presented to this court that the evidence as taken by Judge O'Brien and the rulings made by him would cover the questions involved, and in the rulings of Judge O'Brien was a holding that the contract was not ambiguous. Therefore, no evidence was needed to interpret what the contract meant.

This being true, paragraphs (a), (b) and (c) of this contract were certainly in restraint of trade as encompassing much more than a restriction not to produce certain patented articles. It is specifically stated in (b) that defendant "agrees to discontinue using in all other products handled by Kold-Hold, the vacuum principle" etc. That covers more than truck plates. The same is true of (c), while (a) is in restraint of trade because of our interpretation and rulings.

Title 15 of U.S.C.A. § 1, states: "Every contract * * * in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal * * *."

While there is no evidence that either or both of these parties are in interstate commerce, we assume that they are. American Equipment Co. v. Tuthill Bldg. Material Co., 7 Cir., 69 F.2d 406.

For general statements of what constitutes illegality under the act see United States v. New York Great Atlantic & Pacific Tea Co., 67 F.Supp. 626, 636, 637, affirmed 7 Cir., 173 F.2d 79; United States v. Parker-Rust-Proof Co., D.C., 61 F.Supp. 805, 812, 813; and Philadelphia Record Co. v. Manufacturing Photo Engravers Ass'n, 3 Cir., 155 F.2d 799, 803.

Nor does this contract, concerning itself as it does with patented articles, come within the recognized saving exceptions to the Act. Judge Taft in United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, 46 L.R.A. 122, holds that a contract in restraint of trade is unenforcible in a court of equity unless it comes within certain

exceptions. The restraint at bar is not within the exceptions therein stated but it is agreed that a restraint made merely to protect the patent rights is permissible.

The next question confronting us then is the right of the defendant to raise as a defense the fact that the contract was in restraint of trade. This right was affirmed in the recent case of Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, at page 177, 63 S.Ct. 172, at page 174, 87 L.Ed. 165, where the court held: "Similarly, this Court has declared that anyone sued upon a contract may set up as a defense that it is in violation of the Sherman Act. Bement & Sons v. National Harrow Co., 186 U.S. 70, 88, 22 S.Ct. 747, 754, 46 L.Ed. 1058."

Other cases where the invalidity of the contract under the Anti-Trust Act was an issue in private civil litigation, are Edward Katzinger Co. v. Chicago Metallic Mfg. Co., 329 U.S. 394, 67 S.Ct. 416, 424, 91 L. Ed. 374; MacGregor v. Westinghouse Electric & Mfg. Co., 1946, 329 U.S. 402, 67 S.Ct. 421, 424, 91 L.Ed. 380; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 788, 62 S.Ct. 402, 86 L.Ed. 362; and B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367.

Holding as we do that the clauses (a), (b) and (c) of the contract in question are illegal being in restraint of trade, and that defendant may urge this defense, Sola, supra, and other cases cited, it then becomes necessary to determine whether clause (d) of the contract may be salvaged or we must hold the entire contract invalid. Recent Supreme Court decisions indicate a strict view denying severability. In Edward Katzinger Co. v. Chicago Metallic Mfg. Co., supra, the court, confronted with illegal price fixing in a patent case, held, 329 U.S. at page 401, 67 S.Ct. at page 420, 91 L.Ed. 374 "If the question of severability, urged by the petitioner here, were a new one, we should again arrive at the conclusion we reached in the Sola case. [Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165]. Metallic's obligation to pay royalties and

its agreement to sell at prices fixed by Katzinger constituted an integrated consideration for the license grant. Consequently, when one part of the consideration is unenforceable because in violation of law, its integrated companion must go with it."

To the same effect see the MacGregor case, supra 329 U.S. at page 407, 67 S.Ct. 421, 424, 91 L.Ed. 380.

■ The two foregoing cases are convincing—but we believe they apply to those contracts where the objectives of the invalid provision is so "integrated" with the valid objectives as to be inseparable. Such is not true of the contract at bar. We are constrained to follow American Equipment Co. v. Tuthill Bldg. Material Co., supra, where the court indicated that severability if feasible should be permitted; and decisions under the Federal act are paramount even though the contract at bar was made in Illinois.

### Tranter as Party Defendant

■ Plaintiff has joined James R. Tranter as party defendant herein under the theory that he owns the majority of its stock and controls and dominates the company; that in reality he is the company's alter ego. Citing Wittmann v. Whittingham, 85 Cal.App. 140, 259 P. 63. No evidence of importance was taken to develop this claim of plaintiff. The contract was executed between plaintiff and defendant companies through their duly authorized officers and can only be breached by a party to that contract. There is no evidence of an "alter ego." We hold that Tranter should never have been a party defendant, and that defendant's contention that the bill of complaint be dismissed as to him be granted. Paul v. University Motor Sales Co., 283 Mich. 587, 278 N.W. 714; Burrows v. Emery, 285 Mich. 86, 280 N.W. 120.

### Conclusion

We therefore hold that defendant has not breached its contract with plaintiff and find no cause for action lies in the Dole Refrigerating Company. We further hold that the entire contract in question is invalid being in violation of the Federal Anti-Trust laws except for the clause we labeled "d" and that no action lies against defendant Tranter.

Judgment for defendant.